Elijah "Tootie Pie" COSBY, Jr.,
Plaintiff-Appellant,

v.

Tom JONES, Warden of the Walker
County Correctional Institute,
Defendant-Appellee.

No. 81–7562.

United States Court of Appeals,
Eleventh Circuit.

Aug. 16, 1982.

Word, Cook & Word, Gerald P. Word, Carrollton, Ga., for plaintiff-appellant.

Michael J. Bowers, Atty. Gen., John C. Walden, Sr., Asst. Atty. Gen., Janice G. Hildenbrand, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, AN-DERSON, Circuit Judge, and HOFFMAN *, District Judge.

GODBOLD, Chief Judge:

Cosby appeals from the denial of his petition for writ of habeas corpus. We reverse and remand with directions to grant relief.

### I. Facts

Petitioner, Elijah "Tootie Pie" Cosby, is presently serving a 20-year sentence under a 1979 Georgia burglary conviction. He challenges this conviction on the ground that there was insufficient evidence to constitutionally support the conviction, under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

An apartment in Carrollton, Georgia was burglarized December 10, 1978. Cosby lived in the same apartment complex as the victim. A camera and zoom lens, and a stereo, were taken. Some time between December 11 and 13 (inclusive) Cosby pawned the camera and lens.[1] Cosby was

---

* Honorable Walter E. Hoffman, U. S. District Judge for the Eastern District of Virginia, sitting by designation.

1. The prosecution asserts December 11. The only evidence to support this is the following testimony by the pawnbroker:

Q: Did you have occasion to purchase a minolta camera and lens on or about the 11th of December, last year?
A: Yes, sir.
. . . .
Q: When?
A: Whatever the date was. I forgot the date.
Q: You can refer to anything you have with you. You purchased those back in December?
A: Yes, sir.
. . . .
Q: Do you have [the] bill of sale with you?
A: No, I don't.
Cosby testified to December 13.

arrested. He told a Carrollton police detective that he bought the camera and lens for $40 from a Bobby Williamson. There is conflicting evidence as to two details of this alleged transaction. First, the police detective testified that Cosby told him the purchase was made in Villa Rica,[2] whereas Cosby testified that he bought the camera from Williamson in Carrollton and that he told the detective only that Williamson lived in Villa Rica. Second, based on the pawnbroker's uncertain testimony as to when the camera might have been pawned, *see* note 1 *supra*, the asserted purchase could have been made on December 11, but Cosby testified he bought the camera December 12 and pawned it a day or two later. Also, the detective made a limited but unsuccessful search for Williamson in Villa Rica, and Cosby did not procure Williamson's appearance at the trial.

Otherwise Cosby's testimony was uncontradicted and in fact was corroborated. Cosby testified that Williamson and a companion, both black males, drove up to the King Street Pool Room in Carrollton where Cosby was standing outside. Williamson called Cosby over to the car and offered to sell him the camera for $40. Cosby had only a $50 bill and Williamson had no change, so Cosby got change from an acquaintance, Charlie Hammett, who lives next door to the pool room, and then Cosby bought the camera. Charlie Hammett testified that some time before Christmas while he was talking with Cosby outside of the pool room, a car with two black men drove up and the driver motioned for Cosby.

Cosby went over and spoke with them briefly and returned to ask Hammett to change a $50 bill. Hammett gave him two $20 bills and a ten, and Cosby went back to the car and then walked away with what appeared to be a camera resembling the one stolen.

Cosby also presented at trial an alibi that he was at a party in Rome, Georgia[3] the day of the robbery and that he did not return to Carrollton until December 11 or 12.[4] Several witnesses corroborated this alibi, but their testimony was inconsistent as to the number and identity of persons at the party.

Cosby moved for a directed verdict on the ground that, in the light of his uncontradicted version of how he obtained the camera, the circumstantial evidence of recent possession of the camera after the burglary was not sufficient to carry the state's burden of proof. The court denied this motion. In its instruction to the jury the court charged that, if a burglary has been committed, Georgia law permits the inference that a person in recent, unexplained possession of the goods stolen is the one who committed the burglary. *See Williamson v. State*, 248 Ga. 47, 281 S.E.2d 512 (1981). The court told the jury that recent possession is one circumstance along with all the other evidence in the case from which the jury may infer guilt if it should see fit, but that the inference is not a conclusive one and that the jury may choose to believe the defendant's explanation for possession of the goods.[5]

2. A small town approximately 15 miles from Carrollton.

3. Rome is approximately 50 miles north of Carrollton.

4. Cosby gave two different dates at trial.

5. The court instructed:

I charge you that if you find that the crime charged in this indictment has been committed in the way and manner charged in the indictment, and that certain personal property as set forth in the indictment was stolen as the result of such crime, and if recently thereafter the Defendant was found in possession of such stolen property, or any part thereof, that would be a circumstance, along with all the other evidence in the case, from which the jury may infer the guilt of the Defendant of the charge made in this indictment should you see fit to do so, unless, of course, the Defendant has made explanation of his possession, if any, consistent with his plea of innocence. This is a fact for you, the jury, to determine.

Ladies and gentlemen of the jury, I charge you that the recent possession of property taken from a house which was burglarized, if that possession is unexplained, may be sufficient to authorize the conclusion that the possessor committed the burglary, however, mere possession of stolen property is not a conclusive test of guilt, but only a circumstance from which guilt may be inferred.

The jury convicted Cosby and he was sentenced to 20 years imprisonment.

## II. Exhaustion

Cosby appealed his conviction to the Georgia Court of Appeals, alleging that the evidence was insufficient to support the verdict. The court rejected this challenge, *Cosby v. State*, 151 Ga.App. 676, 261 S.E.2d 424, 425 (1979), and the state concedes that Cosby's sufficiency argument has been exhausted.[6]

The state contends, however, that Cosby has raised a second claim, not exhausted, concerning the constitutionality of the inference of burglary that Georgia allows from recent possession of stolen goods, and therefore this case must be dismissed under *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), which holds that habeas petitions stating mixed exhausted and unexhausted claims cannot be considered by the district court but must be dismissed to allow the petitioner to either exhaust all claims or to bring only exhausted claims.

### A. Background

■ To address the *Rose v. Lundy* contention we must make some prefatory explanation of the law of the constitutionality of presumptions and inferences. In *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Supreme Court explained that there are two broad classes of inferences or presumptions, permissive and mandatory. Permissive inferences, as the one here appears to be, *see* note 5 *supra; Williamson v. State, supra*, 281 S.E.2d at 514, 521,[7] serve the purpose of directing the jury's attention to inferences that it might draw and thus tend to encourage particular conclusions. *Ulster, supra*, 442 U.S. at 170, 99 S.Ct. at 2231, 60 L.Ed.2d at 800 (Powell, J., dissenting); Allen, *Structuring Jury Decisionmaking in Criminal Cases: A Unified Constitutional Approach to Evidentiary Devices*, 94 Harv.L.Rev. 321, 330–31 (1980). Therefore, the Supreme Court requires that in order for a permissive inference instruction to be valid there must be a rational connection between the circumstance giving rise to the suggested inference and the conclusion drawn. The specific test is whether the ultimate fact is "more likely than not to flow from" the basic fact. *Ulster*, 442 U.S. at 165, 99 S.Ct. at 2228. This test is less stringent than the *Jackson v. Virginia* test for sufficiency of the evidence, that a rational trier of fact could find the ultimate fact beyond a reasonable doubt. *Ulster, supra*, at 165, 99 S.Ct. at 2228. The rationality of the inference under an *Ulster* analysis is judged not in the abstract but in the light of the circumstances giving rise to the inference in a particular case. *Id.* at 162–63, 99 S.Ct. at 2227–28.

■ The *Ulster* analysis of the validity of a permissible inference instruction is independent from a *Jackson v. Virginia* analysis of the sufficiency of the evidence, for the former tests whether it is rational to infer an element of the crime from a specific fact and related circumstances, while the latter tests whether such an inference is supported by the record as a whole. Thus a permissive inference might be invalid even though there is sufficient evidence other-

Ladies and gentlemen of the jury, I charge you that no inference that the Defendant committed the crime of burglary can be drawn from the possession of stolen goods by him, if that possession is satisfactory explained, and if you find the explanation offered by the Defendant to be the truth, then you should find him not guilty.

Ladies and gentlemen of the jury, the Defendant does not have to show that he acquired the goods honestly. It is sufficient that he show that they came into his possession in any other way than by burglary.

**6.** Because the basis of exhaustion is comity and not jurisdiction, *see Rose v. Lundy*, —— U.S. ——, ——, 102 S.Ct. 1198, 1210, 1211, 71 L.Ed.2d 379, 396, 397 (1982), exhaustion of state remedies may be waived by the state. *Morgan v. Wainwright*, 676 F.2d 476, 477 n.1 (11th Cir. 1982).

**7.** The instructions are substantially the same in form as instructions in *Barnes v. United States*, 412 U.S. 837, 840 n.3, 93 S.Ct. 2357, 2360 n.3, 37 L.Ed.2d 380 (1973), which were cited by the Court in *Ulster, supra*, 442 U.S. at 157, 99 S.Ct. at 2224, as an example of permissive inference instructions.

wise to uphold the verdict.[8] The independence of the *Ulster* analysis and a *Jackson v. Virginia* analysis is clear from the Court's opinion in *Ulster.* The Court explained that a permissive inference need not meet the more stringent *Jackson v. Virginia* standard for the very reason that such an inference is only "one ... part" of the prosecution's case, and that "the prosecution may rely on *all of the evidence* in the record to meet the reasonable-doubt standard." *Id.* at 166–67, 99 S.Ct. at 2229–30 (original emphasis). Moreover, in its last paragraph the Court was careful to observe that, in addition to the permissive inference being valid, the record as a whole had been found sufficient to establish guilt beyond a reasonable doubt. *Id.* at 167, 99 S.Ct. at 2230.[9] Therefore, determining that a permissive inference instruction is valid does not settle whether the verdict is supported by sufficient evidence.

### B. Discussion

■ The preceding discussion of *Ulster* illustrates that, although the validity of a permissive inference instruction and the sufficiency of the evidence in theory are distinct issues, in practice, where the primary evidence of guilt is the same as the evidence that gives rise to a permissive inference instruction, it is difficult to separate an *Ulster* analysis from a *Jackson v. Virginia* analysis. *See, e.g., Williams v. State, supra,* 281 S.E.2d at 512–20 (raising a *Jackson v. Virginia* issue but analyzing it under *Ulster* ). In the present case we recognized that the inference of burglary from recent possession of the stolen goods is central to our consideration, and we requested supplemental briefing from the parties on the validity of this inference. We did not frame our request in pure sufficiency terms but asked to be briefed on whether the inference "relieves the state of its burden of proving beyond a reasonable doubt every element of the offense." This burden-shifting tenor of the request prompted the parties to focus on *Ulster* and its progeny (*e.g., Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)), and it was then that the state contended that two claims were present in this case and therefore *Rose v. Lundy, supra,* required dismissal. We hold that *Rose* does not apply because Cosby raised only a sufficiency issue in the district court, and therefore any subsequent raising of an *Ulster* issue in the court of appeals, whether by the petitioner or by the court, does not present grounds for dismissal.

■ In *Rose v. Lundy* the Supreme Court announced its "rigorously enforced total exhaustion rule," —— U.S. at ——, 102 S.Ct. at 1203, 71 L.Ed.2d at 388, under which a district court must dismiss habeas petitions containing both unexhausted and exhausted claims rather than simply dismissing the unexhausted claims. One month later the Court clarified that even though the total exhaustion rule is to have "strict enforcement," *id.* —— U.S. at ——, 102 S.Ct. at 1204, 71 L.Ed.2d at 389, the federal courts are to be "reluctant to interpolate an unexhausted claim not directly presented by the petition." *Engle v. Isaac,* —— U.S. ——, ——, 102 S.Ct. 1558, 1563, 71 L.Ed.2d 783, 798 n.5 (1982). The majority explained that, although an unexhausted claim appeared in Isaac's case at the court of appeals level, the claim "formed no part of Isaac's original habeas petition," and therefore *Rose v. Lundy* did not apply. The court warned against a "creative appellate judge ... distill[ing] from [a "confused petition"] an unexhausted ... claim." From

---

**8.** For example, possession of stolen goods two months after a burglary might be an insufficient circumstance to permit a permissive inference instruction, but coupled with an eyewitness testifying to the defendant's climbing out of the victim's window the night of the burglary, which is evidence apart from the possession of the goods and related circumstances, there might be sufficient evidence to support a verdict of guilty.

**9.** The issue of sufficiency was not addressed in the Court's review, but rather the Court noted that the New York Court of Appeals had found the evidence sufficient. The only apparent explanation for this otherwise gratuitous comment is that a *Jackson v. Virginia* test is still necessary even though a permissive inference instruction is valid.

*Engle v. Isaac* the rule is clear, then, that in applying the total exhaustion rule of *Rose v. Lundy*, we look to the original habeas petition presented in the district court, not to the contentions made on appeal, and we do not construe ambiguous petitions as raising unexhausted claims.

In his original habeas petition Cosby claimed that he "was convicted based on evidence which was insufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt," and he cited *Jackson v. Virginia*. The Georgia rule of inference of guilt from recent possession was mentioned only by way of contending that this was the only evidence to support the verdict, and that such evidence was not sufficient. Nowhere in Cosby's initial petition does he cite *Ulster* and other presumption cases or contend that the jury was improperly instructed.

The case was initially referred to a United States magistrate under 28 U.S.C. § 636(b)(1)(B) for his recommendation. In the magistrate's recommendation that the writ should be denied, which was accepted by the district judge, the magistrate mentioned the inference allowed by Georgia law, but he also spoke entirely in terms of sufficiency of the evidence. He did not mention the permissive inference instruction given the jury.

Cosby first began to speak to the district court in terms of an unconstitutional presumption in his objections to the magistrate's recommendation.[10] We do not read his argument as departing from a simple sufficiency claim, however. In essence Cosby argued that if the verdict is allowed to stand on the evidence presented, which he contended consisted only of the presumption and his unrebutted explanation of possession, this "in effect" shifted the burden to the defendant of proving his innocence. This said no more than the obvious proposition that in any case where the prosecution has not proven guilt beyond a reasonable doubt it has not met its burden of proof, and therefore to let the verdict stand is to "in effect" shift the burden of proof. Cosby did not mention or challenge the instruction given the jury. His only contention to the district court was that the magistrate improperly relied on the inference as sufficient evidence. The heart of Cosby's argument was that because there "was no rebuttal of petitioner's explanation [of possession] . . . the standard under *Jackson v. Virginia* . . . was not met." Any discussion of presumptions or burden shifting was but an inartful way of rephrasing this contention.

Were there any doubt concerning this question, under *Engle v. Isaac, supra*, it would be resolved in favor of Cosby. Moreover, the state in response to the identical arguments made in Cosby's original brief to this court viewed the issue as only one of sufficiency and did not raise any exhaustion contention. *See* note 6 *supra*.

Finally, the district judge, in his issuance of a certificate of probable cause, also considered the case as presenting a single claim, sufficiency of the evidence.

In sum, the inference of burglary from recent possession, allowed under Georgia law, was unavoidably discussed in the dis-

---

10. Cosby argued:

Once the defendant has presented his theory, the State must come forward with some form of rebuttal. To hold otherwise in effect shifts the burden to the defendant of proving his innocence. It then becomes not a permissive presumption, . . . but rather a mandatory presumption. . . . Thus, under the interpretation given the presumption by the Magistrate's Report, the State could rely on the presumption without in anyway attempting to rebut defendant's explanation of possession, regardless of the sufficiency or soundness of the explanation given by defendant. . . .

Petitioner specifically contends that once he has made out a prima facie case of explanation of possession of the stolen property, the State can no longer rely on the presumption but must go further to rebut the explanation by the defendant in a material way by connecting the defendant with the burglary . . . or by contradicting the explanation of possession. . . . There was no rebuttal of petitioner's explanation and therefore the standard under *Jackson v. Virginia* . . . was not met.

trict court, for the principal evidence against defendant was his recent possession. Nowhere, however, is this inference challenged as an unconstitutional permissible inference *instruction* to the jury. It was not until this court requested the parties to focus on the inference as relieving the state of its burden of proof that the *Ulster* analysis was developed fully enough to be termed a second issue. Thus, even if the *Ulster* issue could be a separate "claim" or "ground" under *Rose v. Lundy*,[11] it was not properly raised by petitioner at the district court level and thus presents no ground for dismissing the case.

### III. Sufficiency of the evidence

Turning to the merits, Cosby contends that his conviction was not supported by sufficient evidence. The state relies primarily on the inference to be drawn from recent, unexplained possession of goods taken during a burglary that the one in possession committed the burglary. Cosby responds that he presented an unimpeached and reasonable explanation of possession inconsistent with burglary and therefore the inference cannot be drawn unless the state were to rebut his explanation. The state replies that Cosby's explanation is an issue of fact that the jury is entitled to disbelieve, as it obviously did.

 The standard for weighing the constitutional sufficiency of the evidence is set forth in *Jackson v. Virginia*:

> [T]he applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

443 U.S. at 324, 99 S.Ct. at 2791.[12] We are to "view the evidence in the light most favorable to the prosecution," and "all of the evidence is to be considered." *Id.* at 319, 99 S.Ct. at 2789. The Supreme Court has further explained that the *Jackson* standard is a "more stringent test" than a "more likely than not" standard. *Ulster, supra,* 442 U.S. at 166, 99 S.Ct. at 2229. How much more stringent is uncertain, but it is at least clear that if the reviewing court is convinced by the evidence *only* that the defendant is more likely than not guilty then the evidence is not sufficient for conviction.

The inference of burglary from recent possession of stolen goods on which the state relies is of ancient vintage and has widespread acceptance. *See generally, U. S. v. Jones,* 418 F.2d 818, 821–22; 9 *Wigmore on Evidence* § 2513 (Chadbourn ed. 1981); cases collected in *West's Federal Practice Digest* at Burglary # 42, Larceny # 64, and Robbery # 24.1(5). We note particularly the Supreme Court's acceptance of this inference. In *Dunlop v. United States,* 165 U.S. 486, 502, 17 S.Ct. 375, 330, 41 L.Ed. 799 (1897), the Court stated broadly in dictum that "if property recently stolen be found in the possession of a certain person, it may be presumed that he stole it, and such presumption is sufficient to authorize the jury to convict, notwithstanding the presumption of innocence." In *McNamara v. Henkel,* 226 U.S. 520, 524–25, 33 S.Ct. 146, 147, 57 L.Ed. 330 (1913), where the issue was whether there was any com-

---

**11.** We note that although the *Ulster* analysis is distinct from a *Jackson v. Virginia* analysis, it is not certain whether *Ulster* is a separate "claim" for purposes of habeas exhaustion. The Supreme Court has explained that "the ultimate question for disposition ... [may] be the same despite variations in the legal theory or factual allegations urged in its support," if the issue presented in federal court is the "substantial equivalent" of the issue presented in state court. *Picard v. Connor,* 404 U.S. 270, 277–78, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). Elsewhere the Court has stated the test is whether the question presented in federal court "is so clearly distinct from the claims

... presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim." *Humphrey v. Cady,* 405 U.S. 504, 516 n.18, 92 S.Ct. 1048, 1055 n.18, 31 L.Ed.2d 394 (1972). Because we find that the *Ulster issue* was not raised in federal court, we need not decide whether this issue is so "clearly distinct" from a *Jackson v. Virginia* sufficiency issue as to constitute a separate *claim.*

**12.** The *Jackson* standard is given retroactive effect. *Holloway v. McElroy,* 632 F.2d 605, 637–39 (5th Cir. 1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

petent evidence to support an arrest for burglary, the Court held that "[p]ossession [of "the fruits of the burglarious entry"] in the[ ] circumstances [of this case] tended to show guilty participation in the burglary." Finally, in *Wilson v. U. S.*, 162 U.S. 613, 619–20, 16 S.Ct. 895, 898, 40 L.Ed. 1090 (1896), a murder case, the Court stated generally that "[p]ossession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession." [13]

■ Despite the apparent breadth of these statements in distant Supreme Court precedents, we hold that recent possession of stolen goods will not automatically support a guilty verdict for theft or burglary under the *Jackson v. Virginia* standard in every case. Instead, recent possession is to be viewed as probative evidence of the crime, *see* 1 *Wigmore on Evidence* § 152 (3d ed. 1940), and reviewed along with the other evidence in the case to determine whether any rational juror could find the defendant guilty beyond a reasonable doubt. Thus the inference of participation in the crime drawn from possession of fruits of the crime is to be judged like any other inference, that is, on the strength of that inference in the light of the facts of each particular case.

Support for this treatment of the inference is found first in the fact that the Supreme Court has never squarely held that the inference standing alone will support a guilty verdict without the existence of cor-

roborating evidence or circumstances. The Court's statement in *Dunlop, supra*, was broad dictum, used simply as one example of the many inferences traditionally drawn from circumstantial evidence.[14] In *McNamara, supra*, the Court stated no more than that the inference was probative evidence; it gave no indication that the inference was sufficient to sustain a verdict. In *Wilson*, the only case where the Court has squarely upheld a verdict based on this inference, there, was a tremendous amount of additional corroborating evidence and very little exculpatory evidence,[15] and thus the Court did not hold that the inference alone was sufficient.

Second, many courts, including the former Fifth Circuit, have reversed convictions in the face of this inference (or similar inferences). *See, e.g., U. S. v. Mann*, 557 F.2d 1211, 1217 (5th Cir. 1977); *U. S. v. Jones*, 418 F.2d 818 (8th Cir. 1969); *see generally* cases collected in *U. S. v. Burns*, 597 F.2d 939, 944 n.7 (1979), and in *Barfield v. U. S.*, 229 F.2d 936, 944 n.6 (5th Cir. 1956).

Third, there is widespread agreement that the bare inference of theft from possession is insufficient for conviction without corroborating circumstances or evidence. The early English and American sources for this common law inference "reflect guarded circumspection in the use of the doctrine," and generally evince the view that " 'the presumption arising from this fact of pos-

---

**13.** The inference of theft or burglary from recent possession of stolen goods has found support in former Fifth Circuit cases as well. *E.g., Smith v. U. S.*, 413 F.2d 1121, 1125 (1969); *Thurmond v. U. S.*, 377 F.2d 448, 451 (5th Cir. 1967). Georgia has also long applied this rule. *See Williamson v. State, supra*, 281 S.E.2d at 514.

**14.** It is important to note that the Court's holding in *Dunlop* had nothing to do with the sufficiency issue we face here. The Court considered a challenge to jury instructions which told the jury that they might presume that items delivered to a mail box by mailmen were in fact mailed. Defendant argued that the instructions failed to inform the jury that the presumption of innocence is a stronger presumption than the presumption that items de-

livered by mailmen have been mailed. The Court held that there was no need to instruct on the relative weight of these presumptions.

**15.** In this murder case defendants' possession of the victim's property was upheld as supporting the finding that defendants committed the murder. Defendants possessed virtually all of the victim's property, down to his bloody bedsheets. Defendants had camped near the victim's home the night of the murder, and charred articles similar to items owned by the victim and missing from his home were found at the campsite. Footprints similar to the defendants' were found at the murder site. The defendants gave contradictory and demonstrably false accounts of where they obtained the goods.

session, standing by itself, . . . is too slender to support a conviction.'" *See* the thorough analysis contained in *U. S. v. Jones,* 418 F.2d 818, 822–25 (8th Cir. 1969) (quoting a 19th Century edition of Wharton's Am. Crim.Law). At least two circuits have held that corroboration is necessary in order for this inference to be sufficient evidence. *Id.* at 823; *Torres v. U. S.,* 270 F.2d 252, 258–59 (9th Cir. 1959). *See also U. S. v. Bamberger,* 456 F.2d 1119, 1134 (3d Cir. 1972) (dictum) ("the inference of guilt is justified only in the presence of factors which suggest the probability that the person could not have obtained possession in any way other than by theft"). Even where there is no explicit holding to this effect the case law supports this proposition by implication, for all cases applying this inference do so where circumstances have "such force and bearing as to justify the jury['s] finding," quoting *Barnes v. U. S.,* 341 F.2d 189, 192 (5th Cir. 1965), or where there is other corroborating evidence. *See Barfield v. U. S.,* 229 F.2d 936, 941–44 & nn. 1, 6 (5th Cir. 1956) (Brown, J., specially concurring) (collecting cases) ("the total circumstances must furnish a legitimate basis for such an inference"; all cases sustaining the verdict "show on careful examination some additional circumstances").

Careful distinction must be drawn between the inference proffered by the state in this case—that the possessor of stolen goods actually *committed* the burglary— and the inference from possession of stolen goods that the possessor has *knowledge of their stolen quality. Accord, U. S. v. Jones, supra,* 418 F.2d at 824–25. The latter inference is much more widely accepted without qualification or corroborating evidence. *E.g., Barnes v. U. S.,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *U. S. v. Strauss,* 678 F.2d 886, 893 (11th Cir. 1982); *U. S. v. Burns,* 597 F.2d 939, 942–43 (5th

Cir. 1979). This is true because the inference of mere knowledge is a much more likely one. Inferring that one in possession of the goods stolen actually entered the victim's dwelling place and stole the goods is a great deal more specific than inferring that one in possession of stolen goods is aware of their stolen quality. *Cf. Ulster, supra,* 442 U.S. at 158 n.16, 99 S.Ct. at 2226 n.16 (from the evidence of presence at the site of a still, there is a "much higher probability" of association with operation of the still than there is of being in possession of the still; the former inference is valid; the latter is not).[16]

To summarize, cases approving the inference of guilt from possession of recently stolen goods fall into four categories: (1) those where knowledge of the theft is sufficient to convict, *e.g., Barnes v. U. S.,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); (2) those that hold only that possession constitutes probative evidence, *e.g., McNamara v. Henkel,* 262 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330 (1913); (3) those that only approve an *instruction* on the inference, *e.g., Dunlop v. U. S.,* 165 U.S. 486, 501–502, 17 S.Ct. 375, 380–381, 41 L.Ed. 799 (1897); and (4) those that apply the inference where there are corroborating circumstances or other evidence, *e.g., Wilson v. U. S.,* 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896). We have found no case in Fifth Circuit, Eleventh Circuit or Supreme Court jurisprudence, or elsewhere, sustaining the sufficiency of the evidence to convict for actual commission of theft, burglary or robbery where the prosecution's case rested on the bare inference of guilt from possession. If such a case exists, the great weight of authority is still clear.

 Looking then to the facts of this case, the state relies almost exclusively on the fact that Cosby pawned the camera and

---

16. Indeed, as the court in *U. S. v. Jones, supra,* explains, the apparent uniform acceptance of the inference of theft from possession of the goods stolen may have resulted historically from the fact that in many jurisdictions there is no difference in the substantive crimes of larceny and knowing receipt of stolen property. *See, e.g., Jones v. Kemp,* 678 F.2d 929 (11th Cir. 1982) (Georgia prosecution for theft by receipt of stolen property). Thus, there is no need to infer the specific commission of the theft. Where the charge is robbery or burglary, however, and therefore knowledge of the stolen quality of goods possessed is not sufficient to convict, much more caution in the application of the inference is warranted.

lens stolen during the burglary within a few days of the burglary. Cosby's principal contention is that his explanation of possession, which is consistent with innocence, is forceful enough that the jury cannot be allowed to discredit it without some rebuttal by the government. Cosby's testimony that he purchased the camera for $40 from a black man outside of the King Street Pool Room in Carrollton, Georgia is corroborated in detail by eyewitness testimony and is not seriously contradicted by any evidence proffered by the state.[17] Also, Cosby points to his alibi, corroborated by several eyewitnesses, that he was out of town the weekend of the burglary. *Jackson v. Virginia*'s requirement that the evidence be viewed in the light most favorable to the prosecution, 443 U.S. at 319, 99 S.Ct. at 2789, however, commands that we assume that the jury in its assessment of credibility did not believe this exculpatory testimony, and we must defer to the jury's prerogative in this area. *Glasser v. U. S.*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ("It is not for us ... to determine the credibility of witnesses."); *U. S. v. Fairchild*, 505 F.2d 1378, 1381 (5th Cir. 1975) ("the jurors are entitled to give [defendant's explanation] whatever weight they feel it deserves"); *U. S. v. Gianni*, 678 F.2d 956, 958, (11th Cir. 1982) (we make "all credibility choices in support of the jury verdict").[18]

Although in testing the sufficiency of the evidence we are required to disbelieve all of the defense testimony, the guilty verdict may not stand unless the state has proven its case with sufficient evidence to allow a reasonable juror to find guilt beyond a reasonable doubt. We conclude that the state has not done so. The inference of possession of stolen goods is too weak in the circumstances of this case to justify the verdict. First, although Cosby's possession of the camera was fairly recent to the burglary, it was not so recent that it is unlikely that he could have purchased it. *Compare, U. S. v. Wilson, supra,* (defendant found with stolen car 40 feet from garage in early morning hours trying to crank start it); *Williamson v. State, supra,* 281 S.E.2d at 520 (possession within a few hours of burglary). Second, Cosby did not possess a large number of stolen items or a large majority of the items stolen. A camera and lens and a stereo were taken; Cosby had only the camera and lens. *Compare, Williamson, supra* (in possession of stereo, television, clock radio, and checks, all of the items stolen). Third, Cosby did not try to conceal the camera or otherwise act in a suspicious manner concerning his possession of it. To the contrary, he openly pawned the camera in his real name despite the obvious fact that serial number identification of it could easily be made. *Compare, Rugendorf v. U. S.*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) (defendant stored 81 stolen furs in basement closet); *Crone v. U. S.*, 411 F.2d 251 (5th Cir. 1969) (defendant used fictitious name, tried to flee); *U. S. v. Williams*, 405 F.2d 14 (4th Cir. 1968) (defendant arrested attempting to throw away stolen wallet). Fourth, although the jury was not required to believe Cosby's explanation of possession, still the inference of theft is at its strongest when the defendant wholly fails to make a credible explana-

---

**17.** The state attempts to discredit Cosby's explanation by pointing to some inconsistencies in his testimony. They are few and minor, however, and do not affect the substance of Cosby's explanation. Cosby was uncertain whether the purchase was made on the 11th or 12th of December. Also, a detective testified that Cosby told him the purchase was made in Villa Rica, Georgia; Cosby testified that he told the officer only that the person who sold him the camera lived in Villa Rica. Finally, the state speculates that Cosby would not have had $50 to purchase the camera if he was so pressed for cash a day or two later that he had to pawn the camera.

**18.** Although the cited cases are direct criminal appeals, they apply in this habeas context as well. In requiring that we view the evidence "in the light most favorable to the prosecution," the Supreme Court in *Jackson v. Virginia* was employing an often used directive whose well known meaning is to allow the jury to make all credibility decisions. *See, e.g., Glasser, supra.* We find no indication in *Jackson* or cases decided under it that we are to depart from this body of precedent by giving greater scrutiny to credibility in habeas cases.

tion or makes a demonstrably false explanation. *Compare, U. S. v. Williams, supra* (defendant's only explanation where caught throwing away stolen wallet was that he didn't know anything about it); *Wilson v. U. S., supra*, 162 U.S. at 620, 16 S.Ct. at 898 (defendants falsely stated that victim was their uncle). Finally, there is no other corroborating evidence of significance.[19]

In sum, the state relies on an inference that does not have great strength even in the best of circumstances, and the best of circumstances were not present here. Absent some type of corroborating evidence or circumstances, the most that we can say from the bare fact of possession and pawning of the stolen camera a day or two after the burglary is that it gives equal support to an inference of burglary and an inference that Cosby was fencing stolen goods.[20] This is not enough to support a burglary conviction. As discussed above, the Court's *Ulster* case clarifies that if the reviewing court can only say that the ultimate fact is more likely than not, then the *Jackson v. Virginia* standard has not been met. *See* text following note 12 *supra*. This is because *Jackson* requires that a reasonable juror be able to find the defendant guilty *beyond a reasonable doubt*, and if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt. *Accord, U. S. v. Jones, supra*, 418 F.2d at 824–26. This is not to say that whenever the evidence supports a reasonable inference consistent with innocence the jury must acquit, for the Supreme Court has rejected the "theory that the prosecution [must] rule out every hypothesis except that of guilt," *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793, as have we *U. S. v. Bell*, 678 F.2d 547, 550 (5th Cir. 1982) (Unit B en banc). It is only where, after viewing the evidence in its most favorable light and making all credibility decisions in favor of the state the evidence still fails to at least preponderate in favor of the state, that we become concerned with conflicting inferences.[21]

REVERSED and REMANDED for entry of appropriate relief.

---

**19.** The state points to the fact that Cosby lived in the same apartment complex as the victim, although in a different building. This is of only marginal probative value. The state also points to the inconsistencies in Cosby's explanation of possession. *See* note 17 *supra*. His testimony was not so implausible or demonstrably false as to give rise to positive evidence in favor of the government. *Accord, Holloway v. McElroy, supra*, 632 F.2d at 641 (inconsistencies in defendant's story do not support government's case but only discredit the specific points in defendant's testimony). *Compare, U. S. v. Contreras*, 667 F.2d 976, 980 (11th Cir. 1982) ("wholly incredible" evidence bolsters government's case).

**20.** It is of course also possible that his possession was entirely innocent.

**21.** With this caveat in mind, our holding is consistent with *Jackson* where the Court stated:

[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume . . . the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

443 U.S. at 326. The Court of course does not mean that whenever the record supports conflicting inferences, no matter how weak, the prosecution wins, for not only would this be no more stringent than the standard of review in a civil case but also the prosecution would only fail in its proof where there was a total absence of probative evidence, which is the "no evidence" standard rejected in *Jackson*. If *Jackson*'s beyond a reasonable doubt standard is to have any meaning, we must assume that when the choice between guilt and innocence from "historical" or undisputed facts reaches a certain degree of conjecture and speculation, then the defendant must be acquitted. *Ulster* clarifies that this degree of inferential attenuation is reached at the least when the undisputed facts give equal support to inconsistent inferences.

In short, we read the quoted passage from *Jackson* to mean that the simple fact that the evidence gives some support to the defendant does not demand acquittal. However, if the evidence fails to give support to the prosecution sufficient to allow a reasonable juror to find guilt beyond a reasonable doubt, a verdict must be directed despite the existence of conflicting inferences.