# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-00400-SCT

*KENDRICK SHELVY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2019 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| TRIAL COURT ATTORNEYS: | M. A. BASS, JR. |
| | PRICE DARBY HENLEY |
| | M. LAMAR ARRINGTON, JR. |
| | ALEXANDER C. MARTIN |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| |     HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL -  FELONY |
| DISPOSITION: | AFFIRMED - 04/02/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Kendrick Shelvy appeals his burglary conviction.  Because there is sufficient evidence to support the verdict and because the verdict is not against the overwhelming weight of the evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Shelvy was convicted of one count of burglary of a building and sentenced to serve

three years in the custody of the Mississippi Department of Corrections. Shelvy filed a "motion to set aside sentence and motion for judgment of acquittal notwithstanding the verdict of the jury" as well as a motion for a new trial. The circuit court denied the motions. Shelvy timely appealed. On appeal, Shelvy argues (1) that the evidence was insufficient to support the verdict, (2) that the verdict was against the overwhelming weight of the evidence, and (3) that he received ineffective assistance of counsel.

## ANALYSIS

### I. Sufficiency of the Evidence

¶3. Shelvy first argues the evidence was insufficient to support the verdict. He asserts that "[t]he evidence established only a suspicion of guilt based on inferences from circumstantial evidence."

¶4. "When reviewing a challenge for sufficiency of the evidence, this Court must determine whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Naylor v. State*, 248 So. 3d 793, 796 (Miss. 2018) (internal quotation marks omitted) (quoting *Ambrose v. State*, 133 So. 3d 786, 791 (Miss. 2013)). "The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* (internal quotation marks omitted) (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

> [I]f a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be

deemed to have been sufficient.

*Id.* (alteration in original) (quoting *Shelton v. State*, 214 So. 3d 250, 256 (Miss. 2017)).

¶5. "That the only evidence supporting a conviction is circumstantial does not mean the evidence is insufficient." *Walton v. State*, 642 So. 2d 930, 932 (Miss. 1994). "We have consistently held that the State may prove a crime solely by circumstantial evidence." *Id.* But the circumstantial evidence must be "sufficient to prove the defendant's guilt beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence." *Id.* (citing *Fleming v. State*, 604 So. 2d 280, 288 (Miss. 1992)).

¶6. Shelvy was convicted of burglary of a building under Mississippi Code Section 97-17-33(1) (Rev. 2014), which provides,

> Every person who shall be convicted of breaking and entering, in the day or night, any . . . building . . . in which any goods, merchandise, equipment or valuable thing shall be kept for use . . . with intent to steal therein, or to commit any felony . . . shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.

¶7. Shelvy asserts that "the evidence was insufficient to prove beyond a reasonable doubt that [he] was the person who broke into and entered the building." This Court disagrees and finds sufficient evidence was presented to support the guilty verdict.

¶8. On June 7, 2018, Jefferson County Sheriff's Department Deputy Bobby Bailey responded to a dispatch call regarding a possible burglary of a hunting camp owned by Robert Duncan. Deputy Bailey arrived on the scene approximately five minutes later and saw Shelvy walking down the highway about twenty yards from the camp. Deputy Bailey asked Shelvy where he was going and from where he had just come. Shelvy responded that

he had been dropped off and was walking to Robert Day's automobile shop to help move some cars. Deputy Bailey asked Shelvy why his ride would drop him off in that location instead of driving him the extra few hundred yards to the automobile shop. Deputy Bailey noticed that Shelvy was "sweating like he had run a marathon" and asked Shelvy about the excessive sweating. Shelvy responded that he "just . . . sweat[s] like that."

¶9. Deputy Bailey detained Shelvy. Shelvy was handcuffed and advised of his **Miranda**[1] rights. Deputy Bailey then performed a pat down and found a knife in Shelvy's pocket.

¶10. Deputy Bailey walked back to the camp. On his way back, Deputy Bailey noticed a black plastic bag "in the edge of the bush" in a ditch. The bag contained a television, some hats, a pole saw, a hammer, a hacksaw, and some Bud Light beers that were "still ice cold as if it had just come out of the refrigerator." The items were found twenty yards behind where Shelvy was located.

¶11. Near the camp, Deputy Bailey saw fresh footprints which, according to Deputy Bailey, matched the shoes that Shelvy was wearing. Specifically, Deputy Bailey testified that "[t]he shoes that [Shelvy] had on, the print under the bottom of his shoe matched the print that was on the property."

¶12. At the back of the camp, Deputy Bailey found clothes lying on the ground. A pair of coveralls was hanging out a window that had been broken. A ladder was lying under the broken window. Deputy Bailey entered the camp and described the interior of the camp as "in a disarray."

---

[1] **Miranda v. Arizona**, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶13.    Law enforcement contacted Duncan, the owner of the camp. According to Duncan, the camp was always locked, and the windows were always secured. Upon his arrival at the camp, Duncan noticed that the trim around the front door had been torn, the front door's padlock had been bent, the back window had been broken and covered by a pair of coveralls, the glass from the broken window was inside on the floor, and the air conditioner had been beaten in, as if someone had attempted to beat the unit out of the wall. Duncan advised that the items missing from the camp included a flat-screen television, a meat saw, coveralls, some hats, and a knife. He further advised that before then, the camp had been in good shape and all of the missing items were in the camp. Law enforcement returned to Duncan all of the stolen items except for the knife. Duncan explained that the knife was a Christmas gift from his grandson.

¶14.    The knife found in Shelvy's pocket was admitted into evidence at trial. Deputy Bailey identified the knife as the one he found on Shelvy. Duncan was shown the knife and stated that it was identical to the one that he had at his camp.

¶15.    Shelvy asserts that "[his] possession of a knife that was allegedly taken from the camp does not make him guilty of breaking into the camp." But "a defendant's participation in a burglary can be inferred by the defendant's possession of recently stolen property." *Naylor*, 248 So. 3d at 796 (citing *Shields v. State*, 702 So. 2d 380, 382 (Miss. 1997)). "That is, 'the inference of participation in the crime drawn from possession of the fruits of the crime is to be judged like any other inference, that is, on the strength of that inference in the light of the facts of each particular case.'" *Id.* at 796-97 (internal quotation marks omitted) (quoting

5

*Shields*, 702 So. 2d at 382). We must view the "circumstances of possession and the presence or absence of evidence of participation in the crime other than mere possession" based on certain factors. *Shields*, 702 So. 2d at 382 (citing *Cosby v. Jones*, 682 F.2d 1373, 1380, 1382-83 (11th Cir. 1982)). Those factors include

1. The temporal proximity of the possession to the crime to be inferred;

2. The number or percentage of the fruits of the crime possessed;

3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;

4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.

*Id.* at 383 (citing *Cosby*, 682 F.2d at 1380, 1382-83).

### 1. Temporal Proximity of the Possession

¶16. Shelvy was found with a knife matching the one stolen from Duncan's camp a mere five minutes after law enforcement was dispatched to investigate a reported burglary at the camp. The remaining stolen items were discovered shortly thereafter just a few yards from where Shelvy was stopped.

### 2. Number or Percentage of the Fruits of the Crime Possessed

¶17. Only one item, the knife, was found on Shelvy's person. The remaining items were found a short distance away from where Shelvy was stopped by law enforcement. Although the knife was the only item found on Shelvy's person, the record shows that it was the only stolen item that Shelvy could have concealed on his person. The other stolen items, a television, two saws, a hammer, and some hats, were too large.

6

### 3. Nature of the Possession

¶18. The knife was concealed in Shelvy's pocket. The remaining stolen items were concealed in a black plastic bag and were discovered "[j]ust in the edge of the bush" in a ditch near the camp, approximately twenty yards behind where Shelvy was stopped. Additionally, according to Deputy Bailey, Shelvy was "sweating like he had run a marathon," from which the jury could infer that he had been running from the camp in an attempt to avoid detection.

### 4. Explanation for the Possession

¶19. "The inference of participation in the crime is strongest when a defendant fails to make a credible explanation or makes a clearly false explanation." *Jones v. State*, 995 So. 2d 146, 151 (Miss. Ct. App. 2008) (citing *Brooks v. State*, 695 So. 2d 593, 595 (Miss. 1997)). At trial, Shelvy testified in his own defense. Shelvy stated that on the day in question, he caught a ride to the creek behind Duncan's camp. But when asked, Shelvy was unable to recall with whom he caught the ride. Shelvy was also unable to recall about what time he arrived at the creek.

¶20. Shelvy explained that he had been fishing and was walking down the road when Deputy Bailey stopped him. But the record shows that at the time he was stopped, Shelvy had no fishing line, fishing pole, or any other fishing equipment with him. Shelvy denied telling Deputy Bailey that he was headed to Robert Day's automobile shop. In fact, Shelvy stated he did not recall "telling Officer Bailey nothing [sic]." He stated that Deputy Bailey lied about the alleged conversation and the direction Shelvy was walking. According to

7

Shelvy, he was not headed towards Robert Day's automobile shop but was instead headed in the opposite direction toward Fayette.

¶21. Shelvy testified that the knife found in his pocket belonged to him. But Duncan testified that the knife was identical to the one he had at his camp that was missing after the burglary. Interestingly, Shelvy testified that the knife admitted into evidence at trial was not the knife that was taken from him. Shelvy stated that Deputy Bailey lied "about this knife coming out of [his] pocket."

¶22. Regarding the other stolen items, Shelvy testified that he did not see the items in the black plastic bag in the ditch. But Deputy Bailey testified that you "couldn't miss it."

¶23. Shelvy denied any involvement in the charged burglary. He admitted that he had walked through the property to get from the creek to the road but stated that he did not get near the camp.

¶24. "[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Little v. State*, 233 So. 3d 288, 292 (Miss 2017) (internal quotation marks omitted) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). The record shows that Shelvy's theory of the case was presented to the jury, and the jury was given the proper circumstantial-evidence instruction. Additionally, the jury was instructed that the "mere possession of stolen articles, by itself, is not enough to convict a person for the crime of burglary."

¶25. Considering the evidence and the factors set forth in *Shields*, and in light of our standard of review, this Court finds sufficient evidence was presented to support the verdict.

## II. Weight of the Evidence

¶26. Shelvy next argues that "the verdict in this case was against the overwhelming weight of the evidence and that affirming his conviction would sanction an unconscionable injustice." "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict . . . ." *Boone v. State*, 973 So. 2d 237, 243 (Miss. 2008) (quoting *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997), *disagreed with by* *Dilworth v. State*, 909 So. 2d 731 (Miss. 2005)). "When the weight of the evidence is challenged, this Court 'will reverse only when the verdict [is] so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice'" *Naylor*, 248 So. 3d at 796 (alteration in original) (internal quotation marks omitted) (quoting *Christian v. State*, 207 So. 3d 1207, 1214 (Miss. 2016)).

¶27. Here, the jury was presented with testimony from both Shelvy and the State and rendered its decision after the presentation of all evidence.

> Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.

*Boone*, 973 So. 2d at 243 (quoting *Givens v. State*, 967 So. 2d 1, 7 (Miss. 2007)).

¶28. Based on the evidence presented, this Court finds that "the verdict [is] [not] so contrary to the weight of the evidence that to allow it to stand would sanction an

9

unconscionable injustice." *Naylor*, 248 So. 3d at 796 (first alteration in original) (internal quotation mark omitted) (quoting *Christian*, 207 So. 3d at 1214).

### III.     *Ineffective Assistance of Counsel*

¶29.     Shelvy last argues he received ineffective assistance of counsel. Specifically, Shelvy argues that his trial counsel was ineffective by failing to file a motion to suppress challenging Officer Bailey's alleged illegal search and seizure.

¶30.     Every criminal defendant has a state and federal constitutional right to effective assistance of counsel. U.S. Const. amends. VI, XIV; Miss. Const. art. 3, § 26. To prove ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. But a strong presumption exists that counsel's performance constituted trial strategy and was "within the wide range of reasonable professional assistance." *Id.* at 689. Prejudice is demonstrated by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶31.     Ordinarily, claims of ineffective assistance of counsel are not addressed on direct appeal. *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003). Under Mississippi Rule of Appellate Procedure 22(b), "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the

record." Additionally, this Court has explained,

> It is unusual for this [C]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim. . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. This Court will rule on the merits on the rare occasions where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge."

*Wilcher*, 863 So. 2d at 825 (citations omitted) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (Miss. Ct. App. 2002)).

¶32. Here, the record does not affirmatively show ineffectiveness of constitutional dimensions nor have the parties stipulated that the record is adequate to allow this Court to make the finding without consideration of the findings of the trial judge. Moreover, the issue of whether Shelvy's counsel was ineffective by failing to file a motion to suppress is not fully apparent from the record.

¶33. "[T]he failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Shinstock v. State*, 220 So. 3d 967, 971 (Miss. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 2587, 91 L. Ed. 2d 305 (1986)). "[T]he mere failure to file a motion to suppress, in and of itself, cannot support [Shelvy's] claim [that] his counsel was constitutionally ineffective." *Id.* at 971. Because Shelvy never challenged the search and/or seizure before or during trial, the record was not developed. Accordingly, "we are without

11

evidence to carry out the case-by-case, fact-intensive inquiry of whether the search was legal." *Id.*

¶34. Because the record is insufficient to evaluate Shelvy's ineffective-assistance-of-counsel claim, Shelvy's claim should be denied, preserving his right to raise the issue in a petition for post-conviction relief.

## CONCLUSION

¶35. The record shows sufficient evidence was presented to support the verdict, and the verdict was not against the overwhelming weight of the evidence. As a result, Shelvy's conviction and sentence are affirmed. Shelvy's ineffective-assistance-of-counsel claim is denied, preserving his right to argue the issue later in a petition for post-conviction relief.

¶36. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**