Frank Robert WEST, Jr.,
Petitioner–Appellant,

v.

Ellis B. WRIGHT, Jr., Warden; Mary Sue Terry, Attorney General of Virginia, Respondents–Appellees.

No. 89–6686.

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1990.

Decided April 29, 1991.

As Amended June 21, 1991.

---

Cynthia Mazur, Supervising Atty., argued (Steven H. Goldblatt, Director, Joseph Lombard, Patricia Mariani, Heidi Mason, Student Counsel, on brief), Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., for petitioner-appellant.

Marla Lynn Graff, Asst. Atty. Gen., argued (Mary Sue Terry, Atty. Gen. of Va., on brief), Richmond, Va., for respondents-appellees.

PHILLIPS, Circuit Judge:

Frank Robert West, Jr., appeals the dismissal of his petition for a writ of habeas corpus in which he challenged the sufficiency of the evidence to convict him of grand larceny in a prosecution by the Commonwealth of Virginia. We reverse and remand for the issuance of the writ.

I

On December 13, 1978, Angelo Cardova left his vacation home in Westmoreland County, Virginia. Thirteen days later, on December 26, 1978, he returned to find that his house had been burglarized and that various items, totalling about $3,000 in value, were missing. On January 10, 1979, law enforcement officers investigating another theft were allowed by West's wife to enter and search West's residence while West was incarcerated on other charges. In the course of this warrantless search, they seized some of the items stolen two to four weeks earlier from Cardova's residence. Presumably for use as evidence they took away these items along with others. The items determined to be Cardova's included two television sets, a mirror framed with shells, a wood carving, groceries, a synthetic fur coat with the name Esther embroidered in the lining, a silk jacket decorated with the legend "Korea 1970," a mounted lobster and several other specifically identified pieces of property. The value of the Cardova items found in West's residence was about $1,100.

West was charged in a state prosecution with grand larceny, the felonious taking, stealing, and carrying away of over $100 in

property. Va.Code Ann. § 18.2–95 (Repl. Vol.1975).[1]

At trial, the prosecution presented the testimony of six witnesses. Cardova testified as to the timing of the theft and the nature and value of the property taken from his home. West's sister, who owned his residence, and his neighbor both testified that West was the sole inhabitant of the residence in which the property was found. The prosecution also presented the testimony of three law enforcement officials establishing the chain of custody for the Cardova property after it was seized by the police.

Testifying on his own behalf, West of course denied the theft and explained his possession as the result of purchases from flea markets at which he regularly bought and resold merchandise. He recalled having purchased some of the items at issue at a flea market from one Ronnie Elkins. He specifically recalled one transaction in the amount of five dollars and another for five hundred dollars. West was unsure about the flea market at which he had purchased the items from Elkins. He explained that he did not produce Elkins as a witness because he did not know until the day of the trial which items he had been charged with stealing. His testimony was somewhat confused and he was unable to account for how he acquired some of the merchandise.

The Commonwealth presented no rebuttal evidence. In closing argument, the defense argued that the Commonwealth had failed to present any direct evidence that West had stolen any items from the Cardova house. The Commonwealth, in closing, relied exclusively on Virginia's common law permissive inference that one in unexplained possession of recently stolen goods is himself the thief. It argued that West offered no reasonable explanation for his possession of the goods. The judge stated in his instruction:

> If you believe from the evidence beyond a reasonable doubt that property of a

value of $100.00 or more was stolen from Angelo F. Cardova, and that it was recently thereafter found in the exclusive and personal possession of the defendant, and that such possession has been unexplained or falsely denied by the defendant, then such possession is sufficient to raise an inference that the defendant was the thief; and if such inference, taking into consideration the whole evidence, leads you to believe beyond a reasonable doubt that the defendant committed the theft, then you shall find the defendant guilty.

The jury found West guilty and sentenced him to ten years imprisonment.

During the course of the trial, West raised the issue of evidentiary sufficiency several times. At the close of the Commonwealth's case, West moved the court to strike the evidence that had been presented because Virginia had not proven West was the one who "collected these items and carried them off," and had offered no evidence to prove that West was the "active agent" who committed the larceny. He renewed his motion to strike the evidence at the close of West's case. After the jury rendered its verdict, he again renewed the motion to strike and also moved for the court to "set aside the verdict as being contrary to the law and the evidence." On direct appeal, as well as in a later state habeas corpus proceeding, West again alleged that the evidence was not sufficient to convict him of larceny and that the Commonwealth did not prove his guilt beyond a reasonable doubt. He was denied relief both on direct appeal and in his state habeas proceeding.

West then brought this habeas corpus proceeding under 28 U.S.C. § 2254 in the United States District Court, challenging on constitutional grounds the sufficiency of the evidence to convict him. The district court dismissed the petition by summary judgment, concluding that the evidence was

---

**1.** The statutory minimum value has since been raised to $200. See Va.Code Ann. § 18.2–95 (Repl.Vol.1988).

sufficient to convict under the appropriate constitutional standard.

This appeal followed.

## II

We first address two threshold objections by the Commonwealth to the consideration of this federal habeas petition. The first is that West's claim challenging the sufficiency of the evidence has not been exhausted in the state courts. The second is that its favorable consideration by a federal habeas court would involve the adoption of a "new rule" and that its consideration is therefore forbidden by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

In order to address these objections, it is necessary to identify the exact nature of West's constitutional claim. Though the claim indisputably is one that ultimately challenges the constitutional sufficiency of the evidence to convict, the parties disagree on the significance of the use of the permissive inference in defining the exact nature of that challenge.

The Commonwealth characterizes the challenge as being one to the facial constitutionality of the inference. West characterizes it as simply a classic due process challenge to the sufficiency of the evidence (here that used to invoke the inference) to convict him of larceny. We agree with West.

While the circumstances under which a "facial" challenge to the constitutionality of such a permissive inference can be made may not be entirely clear,[2] two of its identifying features are. West's claim has neither.

The first is that a "facial" challenge is directed at the jury instructions that allow the jury to draw the inference, not at the sufficiency of the specific evidence to convict. *See Barnes v. United States*, 412 U.S. 837, 841–43, 93 S.Ct. 2357, 2360–62, 37 L.Ed.2d 380 (1973) (reviewing cases illustrating this mode of "facial" challenge).

The second is that the standard for assessing such a challenge is the "more-likely-than-not" standard of rationality developed in the line of cases, *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *United States v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); and *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), *see Barnes*, 412 U.S. at 842, 93 S.Ct. at 2361, rather than the more stringent "beyond-a-reasonable-doubt" standard for assessing the sufficiency of particular evidence to convict laid down in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ From this it is apparent that West's claim is not one to the facial constitutionality of the inference. Inferentially, he concedes that. He raises no challenge to the jury instructions as such. Throughout, his challenge has been to the sufficiency of the evidence to take the case to the jury under any jury instructions. Where, as here, the only evidence of guilt consists of the "basic facts" of the inference, such a challenge is perforce a straightforward challenge to the sufficiency of that evidence alone to convict under the *Jackson v. Virginia* test. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 166–67, 99 S.Ct. 2213, 2229–30, 60 L.Ed.2d 777 (1979) (where only evidence of guilt is that giving rise to permissive inference, basic facts of inference must meet beyond-reasonable-doubt standard rather than less stringent more-likely-than-not standard); *Cosby v. Jones*, 682 F.2d 1373, 1377 n. 9 (11th Cir.1982) ("a *Jackson v. Virginia* test is still necessary even though a permissive inference instruction is valid").

With the nature of the challenge thus identified, we turn to the Commonwealth's threshold objections to its consideration in this habeas proceeding.

---

**2.** *See County Court of Ulster County v. Allen*, 442 U.S. 140, 155–63, 99 S.Ct. 2213, 2223–28, 60 L.Ed.2d 777 (1979); *Barnes v. United States*, 412 U.S. 837, 841–46, 93 S.Ct. 2357, 2360–63, 37 L.Ed.2d 380 (1973).

## A

Once properly characterized, it is apparent that West's constitutional claim has been adequately exhausted in the state courts. The Commonwealth's contention that it has not been rests on the erroneous premise that it involved a constitutional challenge to the facial validity of the permissive inference. As indicated, it is not that, but is a straightforward due process challenge to the sufficiency of the evidence (in this case consisting solely of the basic facts of the inference) to convict.

In the trial court, as earlier noted, West raised sufficiency of the evidence challenges at several points: (1) by moving at the close of the Commonwealth's case to "strike the evidence" for failure to prove he was the "active agent" in the theft, J.A. at 166a; (2) by renewing this motion at the close of all the evidence, J.A. at 180a; (3) by renewing the motion after return of the jury verdict, J.A. at 204a; and (4) by moving after imposition of sentence to "set aside the verdict as contrary to the law and the evidence," J.A. at 204a.

He then pursued this claim by an assignment of error on direct appeal and later by raising it in his state habeas proceeding. In both proceedings he asserted that the evidence was insufficient to convict him and that the Commonwealth had not proved his guilt beyond a reasonable doubt. J.A. at 46a, 73a.

At all these stages, West adequately alerted the state courts that he was raising a constitutional claim. Any challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction. *Jackson v. Virginia*, 443 U.S. 307, 321, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The fact that West did not couch his objections and challenges in state court in specific constitu-

tional terms is of no consequence; it is not necessary to cite "book and verse on the federal constitution" so long as the constitutional substance of the claim is evident. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); *Hawkins v. West*, 706 F.2d 437, 439 (2d Cir. 1983) (claim in state court that "case fell far short of that required to prove ... guilt beyond a reasonable doubt" adequately raises due process claim).

West's challenge to the sufficiency of the evidence under the federal due process clause to convict him thus has been properly exhausted in the state courts.

## B

Similarly, once West's constitutional claim is properly characterized, it is apparent that to uphold it in this federal habeas corpus proceeding would not be to impose a "new constitutional rule" in violation of the *Teague v. Lane* limitation on federal collateral review.[3]

Here again, the Commonwealth's contention that it would violate *Teague*'s "no new rule" prohibition is based on the erroneous premise that West challenges the facial validity of Virginia's permissive inference. If that were the claim, it might be arguable that its vindication would violate the "no new rule" limitation, for such a rule would prohibit further use of the ancient inference *in any circumstances*, on the basis that it facially violated the "more likely than not" test of rationality. As indicated, that is not the basis of West's claim which, instead, is simply that allowing the inference to be drawn by the jury *on the facts of this case* violated the proof-beyond-a-reasonable-doubt test of *Jackson v. Virginia*. Obviously, a federal habeas court cannot be said to apply a "new constitutional rule" whenever it applies the *Jackson v. Virginia* test to a "new" set of facts in evidence.

---

**3.** *Teague v. Lane*, modifying preexisting retroactivity principles, prohibits (with exceptions not relevant here) federal courts from announcing in collateral review of state court convictions any rule of criminal procedure whose result "was not *dictated* by precedent existing at the time the [habeas petitioner's] conviction [in

state court] became final." 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original). In other words, it shields the final criminal judgments of state courts from being overturned by the adoption on collateral federal review of constitutional rules not in effect at the time of the state court judgment.

Hence, West's claim properly may be considered in this federal habeas proceeding free of the *Teague v. Lane* limitation.[4]

### III

Turning to assessment of the evidence under the *Jackson v. Virginia* standard, we first note some general features of the permissive inference here used to convict West.

The inference that one found in unexplained possession of recently stolen goods was a participant in the theft is an ancient one. In use in the English courts as long ago as the early eighteenth century, it has been widely employed in one form or another in our state and federal courts from earliest times. *See United States v. Jones*, 418 F.2d 818, 821 (8th Cir.1969) (tracing origins and uses of inference).

While the general, "run-of-cases," rationality of the inference may seem pretty clear on an intuitive basis, even that is not as clear today as it was in the days of its origins. As courts have noted in more recent times, the basic premise of the inference at its origins was the limited mobility of goods, and that premise has been substantially undercut by intervening technological and demographic developments. *See Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298, 300 (1974) (citing "advent of densely populated communities, revolutionary advances in communication and transportation, ... increased mobility" as reason for reexamination of inference's premises). Largely in consequence, a number of federal and state courts have come over the years to caution extreme care in its use or have actually modified it in ways which severely constrain its use. *See, e.g., Jones*, 418 F.2d at 823 (inference may be used in federal prosecution only when "corroborated by other circumstantial factors"; conviction of bank robbery reversed where only evidence was exclusive possession of bank bills stolen a day earlier); *United States v. Bamberger*, 456 F.2d 1119, 1134 (3d Cir.1972) (inference only justified in presence of factors suggesting property could only have been obtained through theft); *State v. Heath*, 27 Utah 2d 13; 492 P.2d 978, 979 (1972) (requiring corroboration); *Turner*, 317 A.2d at 300–01 (suggesting that "recent possession" must be defined as being so recent that thief could not have divested himself of property); *see also State v. Smith*, 24 N.C. (2 Ired.) 402, 408–09 (1842) (admonishing that such inferences "even in the strongest case are to be warily drawn").

These decisions of course simply reflect the growing discomfort which some courts have felt about allowing convictions in this day to be based solely upon this inference. None has purported to put its blanket rejection of the inference on constitutional due process grounds. Indeed, we may assume, without deciding, for purposes of this case that its use is not facially unconstitutional under the more-likely-than-not test of "rational connectedness."[5]

Nevertheless, the refusal of these courts, on nonconstitutional grounds, to countenance further use of the inference as the sole basis for conviction under *any* circumstance speaks strongly to the wariness with which its use in a particular case should be assessed under the *Jackson* constitutional standard. Every legitimate concern about the continued viability of the

---

**4.** By this we are simply saying that the result sought by the petitioner here is one that *was dictated* by constitutional precedent, that of *Jackson v. Virginia*, at the time West's state court conviction became final. *Jackson* was decided on June 28, 1979; West's state court conviction became final, for *Teague v. Lane* purposes, on May 30, 1980, when the Supreme Court of Virginia, finding no reversible error, denied leave to appeal. *See Teague*, 489 U.S. at 293, 311, 109 S.Ct. at 1065, 1075 (noting conviction final when Supreme Court denied certiorari).

**5.** *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), upholding against a facial challenge the closely related common law inference of guilty *knowledge* from unexplained possession following recent theft, may suggest, though it does not compel, this assumption. As has been observed, the inference from these basic facts of knowledge is a much stronger one than is the inference of participation. *See Cosby v. Jones*, 682 F.2d 1373, 1381 (11th Cir.1982).

In any event, because West's challenge is not to the facial constitutionality of the inference of theft, that issue is not before us.

inference's basic premise which has led some courts to reject its use in any circumstances applies to its use in particular cases in jurisdictions such as Virginia that still allow it.

Application of the *Jackson v. Virginia* due process test—"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789—is necessarily an evidence-specific judgment call. That test of course presupposes that juries accurately charged on the elements of a crime and on the strict burden of persuasion to which they must hold the prosecution, nevertheless "may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Id.* at 317, 99 S.Ct. at 2788. It was adopted to provide an additional safeguard against that possibility, and to give added assurance that guilt should never be found except on a rationally supportable "subjective state of near certitude." *Id.* at 315, 99 S.Ct. at 2787.

As indicated, the evidence here consisted entirely of that establishing, without real dispute, the basic facts of the common law inference: that about one-third in value of goods stolen between December 13 and December 26, 1978, were found on January 10, 1979, in the exclusive possession of the petitioner West, coupled with petitioner's own testimony explaining his possession as having come about by purchases in the interval. There was nothing in the specific evidence of the theft or the petitioner's later possession that added any further probative force to those bare facts. That is to say, there was no evidence at the theft site more specifically suggesting West's presence there—no fingerprints or footprints, sightings in the vicinity, other tracings of presence, or the like, nor was there at the site of discovered possession any physical indicia, such as soil samples or the like, suggesting West's presence at the theft site.

The evidence therefore poses a classic problem of applying the *Jackson v. Virgi-*

*nia* test to assess the sufficiency of essentially bare, unadorned evidence of recent theft and exclusive possession to convict one of the theft. While this, as indicated, in the end requires a judgment call, at least one court has suggested a principled way in which to approach it. The process suggested is one based on the realization that even essentially bare evidence of theft and ensuing possession necessarily will have some contextual factors pointing toward or away from guilt, and that assessment should focus on these factors in order to test the inferential force of the specific evidence used to invoke the inference in a particular case.

■ In *Cosby v. Jones*, 682 F.2d 1373 (11th Cir.1982), the court collaterally reviewed a state burglary conviction in which the sole evidence of guilt consisted of the basic facts of the common law inference, specifically, that the petitioner attempted to pawn one of a number of stolen items of property within a few days after the theft. Applying the *Jackson v. Virginia* standard in habeas review, the court identified the following contextual factors as critical to assessment of the probative force of the particular evidence of theft and possession:

(a) Whether the possession was recent, relative to the crime;

(b) Whether a large majority of the items stolen in the theft were found in the defendant's possession;

(c) Whether the defendant attempted to conceal the stolen items in his possession;

(d) Whether the explanation given by the defendant, even if discredited by the jury, was "not so implausible or demonstrably false as to give rise to positive evidence in favor of the government";

(e) Whether there is other corroborating evidence to support the conviction. *Id.* at 1382–83.

Assessing the evidence on that basis, the *Cosby* court found it insufficient to convict under *Jackson*'s test of rationality. Because we think this analytical framework is sound, we adopt it for assessing the evidence here. Because we think *Cosby*'s analysis also sound, we draw on it, factor

by factor, for comparative purposes in the course of analyzing the evidence upon which West was convicted.

■ In *Cosby*, the items found in the petitioner's possession, a camera and lens, had been stolen only a few days earlier. Although that theft was relatively recent, the court properly noted that given the nature of the item, "it was not so recent that it is unlikely that [petitioner] could have purchased it." *Id.* at 1382.

In the instant case, the theft from Cardova's residence occurred sometime during a period of two to four weeks before some of the stolen items were found in West's possession. As in *Cosby*, given the nature of the stolen items, this theft was not so recent that a purchase in the interval could not have been likely.

In *Cosby*, only a camera and lens had been found in the petitioner's possession, whereas a stereo in addition had been stolen. The *Cosby* court properly noted that this disparity tended to weaken the inference.

In the instant case, the items found in West's possession made up only a third in value of those stolen from Cardova. As in *Cosby*, this disparity tends to weaken the inference.

In *Cosby*, rather than attempting to conceal the items found in his possession, the petitioner's possession was detected as he attempted to pawn them in the open market. The *Cosby* court rightly noted that this tended strongly to blunt the inference.

In the instant case, the evidence on this factor is not so affirmatively favorable to petitioner, but assessed independently, it is at best neutral and, if anything, favorable to him. The stolen items at issue here were found in "plain view" in a search of West's residence. No evidence as to their exact location in the residence was offered by the Commonwealth. Given the potential probative force of evidence that they were concealed within the residence, it may plausibly be assumed that they were not.

The next factor in the *Cosby* analysis concerns the explanation, if any, proffered by the accused. This factor of course derives from the fact that, as explained in the trial court's instructions to the jury, the inference of theft might be drawn only if the jury found beyond a reasonable doubt that any possession proved "has been unexplained or falsely denied by the defendant." This element of the common law inference has the effect of shifting the burden of production to the defendant to explain his possession, thereby imposing the risk that failing to explain or giving an implausible or effectively refuted explanation may result in the inference of guilt being drawn specifically for that reason.[6] As applied by Virginia, and generally, this inference is not the type dissipated ("burst") by a defendant's mere proffer of explanation; it may still be drawn by the jury's rejection of the explanation, *see Barnes*, 412 U.S. at 845 n. 9, 93 S.Ct. at 2362 n. 9; *Montgomery v. Commonwealth*, 221 Va. 188, 269 S.E.2d 352, 353 (1980), but it is an inference almost certain to be drawn if a plausible explanation is not proffered.

This may well have been the strongest factor in petitioner's favor in *Cosby*, for his testimonial explanation that he had bought the stolen items from a man on the street was corroborated by an eyewitness, and was never directly refuted by the prosecution. The *Cosby* court reasonably concluded that though this explanation obviously was rejected by the jury, it was not so facially implausible or demonstrably false as to serve as positive evidence of guilt.

In the instant case, West's testimonial explanation also was of purchase in the interval. Unlike the situation in *Cosby*, there was no third person testimony corroborating this explanation and on cross-examination West exhibited confusion about the exact circumstances of some of the purchases. But he maintained his general

---

6. An effect that we may assume, though we do not decide, is itself constitutionally permissible in the use of this inference. *See Barnes,* 412 U.S. at 846 n. 11, 93 S.Ct. at 2363 n. 11 (shifting burden of production permissible if there is a "rational connection" between the basic facts and inferred facts of a permissive criminal inference). We need not decide this question here, because, as earlier noted, the inference itself has not been challenged on that basis.

explanation that he had purchased all the items at flea markets, and there was nothing inherently implausible about this explanation, including West's confusion about some of its details, nor did the prosecution directly refute it in any of its specifics.[7]

As did the *Cosby* court, we therefore conclude that the petitioner's proffered explanation could not fairly be treated as positive evidence of guilt, and was, at most, a neutral factor in assessing the probative force of the inference.[8]

The final factor in the *Cosby* analysis is whether there was any evidence other than the basic facts of recent theft and exclusive possession that tended to "corroborate" the inference. There was none in *Cosby*, and there is none in our case. As indicated, the record here is a classic example of guilt being found on no other basis than the inference that could be drawn from evidence that a theft was followed by the discovery some two to four weeks later of a portion of the stolen goods in the exclusive possession of a defendant who offered an exculpating explanation for his possession that was neither facially implausible nor directly refuted by any conflicting evidence.

We therefore conclude, as did the court in *Cosby*, that the evidence here, assessed in its entirety and in the light most favorable to the prosecution, was not sufficient to persuade any rational trier of fact of this petitioner's guilt, that his conviction on that evidence therefore violated his constitutional right to due process, and that he is entitled to the relief sought in this habeas corpus proceeding.

## IV

A determination in federal collateral review that a state court conviction by jury verdict was not supported by constitutionally sufficient evidence is one to be made with special caution and anxiety. Where, as here, it is made in the process of reversing a federal district court, it involves disagreement on this fundamental matter with a properly instructed state jury of twelve, a state trial judge, the state's supreme court, and a federal district judge. And it involves disagreement from a vantage point far removed from the immediacy of the testimonial evidence whose sufficiency is at issue. Indeed, there may be no more delicate constitutional determination in federal collateral review, given its unique rejection not only of state judicial rulings but of state jury findings. Aware of its special delicacy when viewed in this stark way, we nevertheless have felt obliged under the constitutional test we

7. West's general explanation, given in testimony some five months after the events in issue, was that he regularly bought and sold items in various flea markets in the area, and that this was how he came into possession of the stolen items found in his residence. He identified only one individual seller, a Ronnie Elkins, from whom he claimed to have bought items. Pressed for details on cross-examination, he was unable to remember exactly where he had bought specific ones of the items, and was uncertain in particular about where his purchases from Elkins occurred and the exact items involved in those purchases. Questioned as to why Elkins had not been subpoenaed as a witness, West responded that he had not known until trial the particular items among those taken from his residence that he was charged with stealing from Cardova. While at first blush this collateral explanation may itself seem incredible, thereby drawing all else in question, it becomes more plausible when the circumstances of the items' seizure by law enforcement officers are considered. They were taken, along with a number of other items, from West's residence while he was incarcerated on another charge and, so far as the record shows, he therefore could have been unaware until trial of the exact items taken from his residence that allegedly were stolen from Cardova. The Commonwealth's indictment did not identify them except as "property of Angelo Cardova having a value of $100 or more," and while the Commonwealth suggests that West must have known because of "discovery motions by defense counsel," no such discovery motions and responses or other evidence were offered to the trier of fact in rebuttal of his testimony.

8. An interesting contrast with West's facially plausible explanation of his possession may be found in one found so implausible as to amount to positive evidence of guilt in another, post-*Cosby*, Eleventh Circuit case, *United States v. Eley*, 723 F.2d 1522 (11th Cir.1984) (that unknown truck driver had turned over to defendant the trailer of a disabled eighteen-wheeler rig to be towed to a distant truck stop).

apply to make that determination here. In doing so, we think it not amiss to suggest that if we are right—as of course we must believe we are—in so disagreeing with these others, it may well be mainly because of the high quality of advocacy in behalf of the habeas petitioner that was first made available to him in this court.

We also think it proper, in view of the ancient lineage and presumably frequent use in Virginia courts of the common law inference here in issue, to emphasize the narrowness of our decision as it deals with that issue. We do not hold either that the inference may not be used under any circumstances (because facially unconstitutional under the more-likely-than-not test), nor, on the other hand, that, if properly challenged, it would pass muster under that test. Because its use on that basis has not been challenged, we have not been required to address that issue nor the preliminary one whether under *Teague v. Lane* a habeas court could appropriately consider it if it were raised. These remain as open issues respecting the use of this inference, for we hold only that the specific evidence used to invoke the inference of guilt here failed to meet the beyond-a-reasonable-doubt test of *Jackson v. Virginia*.[9]

We therefore remand the proceeding to the district court with directions to issue the writ vacating West's conviction.

SO ORDERED.

---

**9.** In view of this holding, we need not address West's further constitutional claim that he was denied due process by the failure of the state courts to order a new trial on the basis of an unsworn "affidavit" submitted by Ronnie Elkins in 1987, which generally corroborated West's testimony that he had bought some of the allegedly stolen property from Elkins. J.A. 77a–78a.