IN THE SUPREME COURT OF MISSISSIPPI
NO. 92-KA-01067-SCT

*JOSEPH E. SHIELDS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/8/92 |
| TRIAL JUDGE: | HON. W.R. (WILLIAM) LAMB |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES D. MINOR |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/27/97 |
| MOTION FOR REHEARING FILED: | 3/31/97 |
| MANDATE ISSUED: | 5/15/97 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The matter before the Court involves an appeal from a conviction of burglary where we are called upon to decide whether proof of possession of stolen articles, without more, is sufficient to convict a person for the crime of burglary. We conclude that the possession of stolen articles, standing alone, may be sufficient to satisfy the beyond a reasonable doubt standard given sufficiently probative circumstances of possession. Accordingly, we affirm.

**I.**

¶2. Officer Calvin Sellers testified that after returning home in Lafayette County, Mississippi from a wedding around 1:00 PM on February 1, 1991, he noticed that the front door of his house was left standing open. Later that afternoon, when his sons returned home from school, he requested that they see if they noticed anything missing around their rooms. One of the sons discovered that he had four guns missing out of his room. The four guns were a .410 gauge shotgun, a 20 gauge single shotgun, a B. B. Gun, and a bolt action 30-6 army surplus gun.

¶3. The authorities were notified, and the house was dusted and examined for fingerprints and footprints. No solid fingerprints were found, and the footprints were not matched with the defendant's. However, a call was received by the Batesville authorities from a Batesville pawn shop regarding the purchase of the guns. The guns had been offered to the pawn shop on the same day they were stolen. Officer Sellers and his sons identified two of the guns bought by the pawn shop. The third gun, identified by Sellers as stolen, was recovered at the pawn shop but the record is unclear as to how it came to be there.

¶4. Mr. Doyle Pearson, the owner of the Batesville pawn shop, testified that the defendant, Joseph E. Shields, sold him two of the guns and offered the third for sale. He testified that he was not interested in the army rifle but gave no indication as to whether Shields left it with him anyway. He stated that the defendant told him that he bought and sold guns all the time. After buying the two shotguns, Pearson notified the Batesville authorities.

¶5. On March 29, 1991, Joseph E. Shields was indicted on for the burglary of the dwelling of Officer Calvin Sellers. He was subsequently arrested. During the trial proceedings, the State presented four witnesses. After the State rested, the defense moved for a dismissal of the indictment and in the alternative for the directed verdict or judgment of acquittal as a result of the State's failure to establish a prima facie case and sustain its burden of proof. The trial court overruled the motion and the defense called no witnesses on its behalf.

¶6. After the jury returned from deliberation with a verdict of guilty, the trial court sentenced Shields as a habitual criminal to a term of ten years without parole. The trial court also found Shields in direct contempt of court and sentenced Shields to serve ten days in county jail for his conduct during the pretrial hearing on January 6, 1992, and one hundred twenty days in jail for his conduct during the post trial motion hearing on July 13, 1992. On appeal, the defendant asserts three assignments of error: (1) the trial court committed error by not granting him a preliminary hearing; (2) the trial court erred in allowing the jury's inference of guilt from the mere possession of stolen property to be sufficient for a conviction for the crime of burglary; and (3) the trial court erred in finding the defendant in direct contempt of the court.

## II.

### a.

¶7. The defendant asserts that the trial court committed error by allowing the jury to infer guilt solely from the defendant's possession of the stolen guns. He further asserts that this inference is not sufficient to support a conviction for the crime of burglary.

¶8. Shields was convicted of burglary under Miss. Code Ann. § 97-17-19 (1972), which states that "any person who shall be convicted of breaking and entering any dwelling house, in the day or night, with intent to commit a crime, shall be guilty of burglary, and be imprisoned in the penitentiary not more than ten years." Miss. Code Ann. § 97-117-19 (1972).

¶9. In *Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990) this Court held that "[m]ere possession of stolen articles, by itself, is not enough to convict a person for the crime of burglary." We

distinguished prior cases in this area which might appear inconsistent with that view. We pointed out that in ***Toncrey v. State***, 465 So. 2d 1070 (Miss. 1985), there was flight as well as an offer to lead authorities to other stolen items as corroborative evidence of guilt. ***Id.*** at fn. 2. As for ***Rushing v. State***, 461 So. 2d 710 (Miss. 1984), this Court noted that the issue there raised concerned the definition of "recent" within the doctrine giving inferential weight to "recent possession." ***Id.*** We also noted that in both of these cases, the appellants had offered no explanation whatever.

¶10. The decisions of other jurisdictions can be helpful in analyzing this issue. In Indiana, the state's Supreme Court ruled in ***Giles v. State***, 162 Ind. App. 639, 320 N.E.2d 806 (Ind. 1974), that "unexplained exclusive possession of recently stolen goods may constitute a circumstance from which the trier of fact may draw an inference of guilt, and may support a conviction of second degree burglary <u>where other evidence is adduced to link the defendant with the crime.</u>" ***Id.*** at 643, 320 N.E.2d at 808 (emphasis supplied). In Oklahoma, the State Supreme Court held in ***Jones v. State***, 468 P.2d 805 (Okla. App. 1970), that "the mere possession of property recently stolen is not sufficient to convict the possessor of Larceny or Burglary of it, but when the fact is supplemented with other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to pass upon guilt or innocence of the defendant." ***Id.*** at 807. The Supreme Court of Pennsylvania has announced that "[c]learly, evidence of possession of stolen property may be relevant in deciding whether the possessor is the one who stole it. However, as in a case of receiving stolen property, it is only one piece of evidence, and evidence of possession alone is not sufficient to prove burglary or larceny beyond a reasonable doubt." ***Commonwealth v. Simmons***, 233 Pa. Super. 547, 558, 336 A.2d 624, 630 (Pa. 1975).

¶11. This is a circumstantial evidence case. It follows that the test to be applied in considering the sufficiency of the proof is whether a rational fact finder might reasonably conclude that the evidence excludes every reasonable hypothesis inconsistent with guilt of the crime charged. ***Deloach v. State***, 658 So. 2d 875, 876 (Miss. 1995); ***Murphy***, 566 So. 2d at 1204; ***Vick v. United States***, 216 F. 2d 228 (5th Cir. 1954). Put another way, "[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charge, then a reasonable jury must necessarily entertain a reasonable doubt." ***Clark v. Procunier***, 755 F. 2d 394, 396 (5th Cir. 1985)

¶12. In a case quite similar to that before the court, the Eleventh Federal Circuit observed that where "the most that we can say from the bare fact of possession and pawning of the stolen camera a day or two after the burglary is that it gives equal support to an inference of burglary and an inference that [of] fencing stolen goods." There is "not enough to support a burglary conviction." ***Cosby v. Jones***, 682 F.2d 1373, 1383 (11th Cir. 1982).

¶13. The ***Cosby*** Court adopted a standard with reference to the cases involving the inference to be drawn from possession of recently stolen property which is in keeping with the jurisprudence of this state as analyzed in ***Murphy***. That is, "the inference of participation in the crime drawn from possession of the fruits of the crime is to be judged like any other inference, that is, on the strength of that inference in the light of the facts of each particular case." ***Cosby***, 682 F. 2d at 1380. The circumstances of possession and the presence or absence of evidence of participation in the crime other than mere possession must be viewed. ***Id.*** at 1380, 1382-83.

¶14. Extrapolating from that case we can arrive at common sense circumstances to be considered:

1. The temporal proximity of the possession to the crime to be inferred;

2. The number or percentage of the fruits of the crime possessed;

3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;

4. Whether an explanation is given and whether that explanation is plausible or demonstrably false. [(1)]

*Id*.; *see also Cosby v. Wright*, 931 F. 2d 262 (4th Cir. 1991), *rev. on other grounds*, -- U. S. --, 120 L. Ed. 2d (1992). In the instant case, the inference must gain strength from the circumstances of possession as there exist no other corroborating evidence.

¶15. The first factor, the temporal proximity of possession, lends great strength to the inference that Shields committed the burglary. There is evidence that Shields possessed fruits of the burglary on the same day of the burglary. The second factor also lends strength. Three of the four items taken were identified in Shields' possession. The third factor detracts from the inference. Shields sold these guns, bearing serial numbers, in his own name without any attempt to hide his identity. Finally, the fourth factor lends strength to the inference, since Shields offered no explanation whatever. Although there is evidence that he told the pawnbroker that he bought and sold guns all of the time, there is no indication that he bought these guns or acquired them in any other manner. The *Cosby* Court observed that "the inference is at its strongest when the defendant wholly fails to make a credible explanation or makes a demonstrably false explanation." *Id.* That observation is consistent with our precedents. *Murphy v. State*, 566 So. 2d 1201 (Miss. 1990).

¶16. Considering all of the indicia of strength of the inference together, we must conclude that under the circumstances of this case the inference of burglary is sufficient to support a conviction. Accordingly, we affirm.

**b.**

¶17. The defendant asserts that the trial court erred in failing to grant a preliminary hearing. He bases his argument on this Court's ruling in *Avery v. State*, 555 So. 2d 1039 (Miss. 1990). *Avery* no longer controls the disposition of this issue. Rather, this Court's decision in *Mayfield v. State*, 612 So. 2d 1120, 1129 (Miss. 1992), is dispositive. In *Mayfield*, this Court held that "once a defendant has been indicted by a grand jury, the right to a preliminary hearing is deemed waived." *Id.* An indictment was returned against the defendant by a grand jury on March 29, 1991, prior to his arrest. Thus, the defendant had no right to a preliminary hearing.

**c.**

¶18. The defendant asserts that the trial court committed error in finding the defendant in direct contempt of court based on the fact that the statements made by the defendant were directed to the judge individually and not against the court as a legal institution. The factual findings of a trial court are affirmed unless manifest error is present and apparent. *UHS-Qualicare v. Gulf Coast*

***Community Hosp.***, 525 So. 2d 746, 753 (Miss. 1987); ***McDaniel Brothers Construction Co. v. Jordy***, 195 So. 2d 922, 924 (Miss. 1967). However, where an appeal addresses a finding of criminal contempt which is punitive in nature, "this Court is not bound by the manifest error rule when reviewing an appeal of a conviction of criminal contempt." ***Premeaux v. Smith***, 569 So. 2d 681, 683 (Miss. 1990). There must be an "*ab initio*" review and determination of "whether on the record the contemnor is guilty of contempt beyond a reasonable doubt." ***Id.*** at 683-684; ***Mabry v. Howington***, 569 So. 2d 1165, 1167 (Miss. 1990) (reversing and discharging defendant of criminal contempt); ***Cook v. State***, 483 So. 2d 371, 374 (Miss. 1986).

¶19. During the pretrial proceedings on January 6, 1992, where the judge heard motions from the parties, the following exchange between the defendant and the court took place:

> BY MR. SHIELDS: If you so say it and not going by the law and just wanting to have a kangaroo court send me back over to the jail and it ya'll have a kangaroo party and send me a copy of the outcome. Ain't no need for me being here because ya'll don't go by the law yourself then there is no justice here just have a party and send me the outcome. In fact you act like a kangaroo so much you even look and smell like one.

> BY THE COURT: Mr. Bell, instruct your client as to what constitutes direct contempt.

> BY MR. SHIELDS: Contempt it all you want to big kangaroo.

> . . . .

> BY MR. SHIELDS: There ain't no need in bringing me over here. You're going to do what you want to anyhow. You ain't going by no law. Maybe you was wanting some of that eight thousands dollars that lawyer told me to pay.

> BY THE COURT: Sheriff, you can take him back 9:00 o'clock in the morning we will begin [with the trial].

> BY MR. SHIELDS: See ya big kangaroo.

¶20. On July 13, 1992, during the defendant's post trial motion hearing another exchange took place between the defendant and the court which included:

> BY THE COURT: Your appeal of this conviction to the State Supreme Court is in no way affected. You've got a right to appeal to the Supreme Court.

> BY MR. SHIELDS: That is what I wanted to do. Because you misused your authority and you would not give me a fair and proper trial. You made an example out of me because I wouldn't pay seven thousand dollars. That makes you one of the most cold blooded, cruel perverted bastards I have seen in my life and you can put that in the record too. I go to a higher court with it and I have heard from this courtroom today I'm telling and when you get through that's where it's going to be at.

> . . . .

> BY THE COURT: Do you want to continue. Anything you say is being written down.

BY MR. SHIELDS: Because you're going to do your best to use your authority to see I can't get a fair trial because I wouldn't pay off. That is exactly what it is make an example out of me but see I'm a man just like you are. The truth of the matter you were getting a cut by seven thousand dollars and since I didn't pay it you want to make an example of out of me. It don't work like that-- and again you're one of the most perverted bastards I have ever seen.

. . . .

BY THE COURT: Well, I'm not through yet. I'm going to get in this record and I'm going to protect your legal rights.

BY MR. SHIELDS: You ain't protecting nothing but trying to cover your own butt because you did it illegal and you know it.

¶21. The court found Shields in direct contempt of court for his conduct on January 6, 1992, and July 13, 1992, and sentenced him to ten days in county jail for the first act and one hundred twenty days in jail for the conduct in July of 1992. The sentence was to run consecutively with any other sentences that he was presently serving in the County jail.

¶22. In **Premeaux v. Smith**, 569 So. 2d 681 (Miss. 1990) this Court stated that "a citation for criminal contempt is to vindicate the dignity and authority of the court." **Id.** at 684. The conduct must be directed at the judge acting in his judicial capacity, not individually. **Culpepper v. State**, 516 So. 2d 485, 486 (Miss. 1987); **Hentz v. State**, 496 So. 2d 668, 675 (Miss. 1986). Following these cases, it is clear from the record that the defendant's conduct was directed at the judge in his judicial capacity. Such conduct is unexcusable and it offends the dignity and authority of the court. The defendant was indeed guilty of this conduct beyond a reasonable doubt. Therefore, we hold that the trial court's decision as to its finding of contempt be affirmed by this Court.

¶23. For the foregoing reasons, we affirm the judgments of the circuit court.

¶24. **CONVICTION OF BURGLARY OF A DWELLING AS AN HABITUAL OFFENDER AND SENTENCE OF TEN (10) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. DIRECT CONTEMPT OF JANUARY 6, 1992 AND SENTENCE OF TEN (10) DAYS IN JAIL AFFIRMED. DIRECT CONTEMPT OF JULY 13, 1992 AND SENTENCE OF ONE HUNDRED TWENTY (120) DAYS IN JAIL AFFIRMED. SENTENCE IS TO RUN CONSECUTIVELY WITH EACH OTHER AND TO ANY OTHER TERMS OF INCARCERATION APPELLANT IS PRESENTLY SERVING.**

**PRATHER, P.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., JOINS THIS OPINION IN PART. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND PITTMAN, J. LEE, C.J., JOINS THIS OPINION IN PART.**

**McRAE, JUSTICE, DISSENTING:**

¶25. Because the majority decision alleviates the prosecution of its burden to establish the elements of

an alleged crime beyond a reasonable doubt, and infringes upon the defendant's right to choose not to testify at trial, I respectfully dissent.

¶26. Allowing the jury to infer guilt from the defendant's failure to explain his possession of stolen goods impermissibly places the burden on the defendant to prove his innocence. If his silence is going to be counted against him, as the majority suggests should happen under the authority of *Cosby v. Jones*, 682 F.2d 1383 (11th Cir. 1982), it follows that the defendant must provide proof of his innocence to rebut the charge of burglary and prevent conviction. This is directly contrary to the presumption of innocence, the foundation of our criminal justice system.

¶27. Not only does the analysis improperly shift the burden of proof to the defendant, but it infringes on the defendant's right to remain silent and now permits the prosecution to freely to comment on a defendant's failure to take the witness stand. The prosecution is absolutely not permitted to make a direct comment, or reference by innuendo or insinuation to a defendant's failure to testify on his own behalf. U.S. Const. amend. V; *Ladner v. State*, 584 So. 2d 743 (Miss.1991); *Griffin v. State*, 557 So. 2d 542, 552 (Miss. 1990); *Livingston v. State*, 525 So. 2d 1300, 1306-07 (Miss. 1988); *see also Monroe v. State*, 515 So. 2d 860, 864 (Miss. 1987) (overlooking procedural bar where fundamental rights are offended such as when prosecution comments on defendant's choice not to testify). Given the analysis established by the majority, the prosecution may discuss the defendant's failure to give an explanation, and even instruct the jury to emphasize his silence in their determination of guilt. While a jury is allowed to infer guilt from a defendant's actions, it does not follow that the prosecution should now be able to openly discuss a defendant's silence at trial. If the majority does not perceive this appeal as a constitutional attack, then why do they, in the same footnote, address the issue and implicitly give a stamp of approval to the constitutionality of allowing the prosecution to openly comment on the defendant's silence?

¶28. The decision to affirm would be more persuasive had this sufficiency of the evidence analysis not been employed simply because there was not enough evidence to convict otherwise. In its reckless decision to affirm, the majority sidesteps our Constitution and blurs the distinction between the crimes of burglary and receiving stolen property. Where now is the line drawn between these two charges? Under the four factors analyzed by the majority, it is far too easy for an individual who chooses to remain silent, in order to prevent incriminating himself on a possible charge of receiving stolen property, to be convicted of burglary.

¶29. This Court's job is to make sure that both sides get a constitutionally fair trial. A defendant does not maintain the burden to prove his innocence, and he maintains the absolute right to remain silent. Because the majority infringes on these rights in upholding this conviction, I respectfully dissent.

**SULLIVAN, P.J., AND PITTMAN, J., JOIN THIS OPINION. LEE, C.J., JOINS THIS OPINION IN PART.**

1. It has been strongly suggested that requiring an explanation from one in possession in these circumstances contravenes the right to remain silent. This Court, in dicta in *Weaver v. State*, 481 So. 2d 832, 834, rejected any notion that this possibility is fatal to the inference of burglary from mere

possession. The Court stated that it mattered not that the witness' right not to testify was protected by the Constitution, that right does not prevent a jury from inferring guilt from his actions. ***Weaver v. State,*** 481 So. 2d 834-835. The Fourth Circuit in ***West v. Wright***, 931 F. 2d at 262 (4th Cir. 1991), assumed without deciding that there was no constitutional violation in thus shifting the burden of production, citing ***Barnes v. United States***, 412 U. S. 837, 846 n. 9 (1973) ("shifting burden of production is permissible if there is a "rational connection" between the basic facts and inferred facts of a permissive criminal inference"). 931 F. 2d at 269 n. 6. That court did not reach the question of the constitutionality of the inference itself, because it had not been raised. ***Id.*** We do not perceive Shields' claim here as a constitutional attack on the inference but rather whether, given the inference, the evidence is sufficient to support a conviction.