KITCHENS, Justice,
for the Court:
¶ 1. Michael Ambrose was indicted for capital murder while in the commission of a robbery in Harrison County, Mississippi. After his trial in August 2012, the jury acquitted Ambrose of capital murder and found him guilty of deliberate design murder. The trial court sentenced Ambrose to life imprisonment. Ambrose appealed, arguing that:
1. The evidence is insufficient to support the verdict.
2. The verdict is against the overwhelming weight of the evidence, which establishes that Ambrose either acted in necessary self-defense or was guilty, at most, of manslaughter.
3. Ambrose received constitutionally ineffective assistance of counsel due to trial counsel’s failure to request an instruction on imperfect self defense.
¶2. We affirm Michael Ambrose’s conviction and sentence, finding that issues one and two are without merit, because sufficient evidence to support a murder verdict was adduced and the verdict was not against the overwhelming weight of the evidence. Further, we dismiss Am-brose’s claim of ineffective assistance of counsel without prejudice to his ability to raise it in post-conviction proceedings.

*788
FACTS AND PROCEDURAL HISTORY

¶ 3. It is undisputed that on the night of April 3, 2009, Michael Ambrose shot and killed Marshall Still. Ambrose is the only-living witness to the shooting. The events which led to the shooting generally are undisputed. The facts immediately surrounding and subsequent to the shooting and death of Still are disputed, but they provide significant evidence which supports Ambrose’s conviction.
1. Investigation
¶ 4. At around 9:45 p.m. on the night of April 3, 2009, the body of Marshall Peter Still was discovered in the parking lot of the Snappy Car Wash in Biloxi, Mississippi, by Gesrick Palmer. Palmer immediately called 911. At trial, he testified that the police arrived less than five minutes later, and that he never touched the body or removed anything from it. He also testified that he had no way of knowing how long the corpse had been where he found it.
¶ 5. Investigator Michael Manna of the of the Biloxi Police Department testified that he arrived on the scene approximately one hour after Palmer had called 911. He saw the decedent lying on his back, -with one pocket semi-pulled out, with a pack of cigarettes in it. Other than an earring, Manna did not see any jewelry on the body. He also testified that, to his knowledge, Still did not have any money on him, nor did he have any marihuana. Manna took swab samples of Still’s blood.
¶ 6. Chris Deback, another investigator with the Biloxi Police Department, testified that the police recovered Still’s cellular telephone from the scene. Investigators ascertained the last phone number that had been entered into the cell phone and tracked down the owner of that cell phone number. The owner of the telephone number was Diana Smith of Gulf-port, who told investigators that her relative, Chadwick Moffett, had been using the phone with Robert Williams and Michael Ambrose. This led to the development of Ambrose as a suspect by the police.
¶ 7. The subsequent investigation led police to Ambrose’s car in Terry, Mississippi. When they came upon the vehicle, a tan 1995 Ford Crown Victoria, police noticed that the license plate was missing and the window tinting had been removed. The car was parked in a neighbor’s driveway, and the neighbor told police the vehicle belonged to Ambrose and that he did not have permission to park there. The police were informed that Ambrose lived in a trailer nearby, and they subsequently obtained authorization to search the trailer and surrounding area. In the area around the trailer, police recovered a black box, which contained a large bag of marihuana. The bag of marihuana had blood on it, a sample of which was collected. Investigators also collected samples of blood that were found in the front passenger section of the car. The blood sample from the passenger seat and the blood from the bag of marihuana matched the reference sample from Still. Police also recovered from the vehicle a gold necklace in the driver’s side, an identification card for Michael Ambrose, and a beer bottle. Ambrose was arrested later that morning and was charged with the capital murder of Still, with the underlying felony of robbery.
¶ 8. An autopsy revealed that Still was killed by a single bullet which had entered the back of his left arm and continued through his heart and both lungs before exiting near his right nipple, causing massive internal hemorrhaging. An unidentified spent bullet was found in the trunk of Ambrose’s car. Forensic pathologist Dr. Paul McGarry testified that, based on gunpowder marks on the body, the gun must have been fired from inches away. He *789 testified that, once Still had suffered a wound of this kind, he would have died in minutes.
2. Ambrose’s testimony
¶ 9. At trial, Ambrose testified in his own defense as follows. On April B, 2009, Ambrose had driven from his home in Terry, Mississippi, in a tan 1995 Crown Victoria automobile, to meet his friend, Chad Moffett, in the Orange Grove area of Gulfport. When he arrived, Ambrose, Moffett, Robert Williams (Moffett’s cousin), and some other men visited and smoked marihuana. Ambrose and Moffett decided to purchase some more marihuana, so Moffett telephoned Marshall Still, described as a known drug dealer. Later that evening, Ambrose called Deshawn Brown to ask whether he would come along to buy some marihuana. Ambrose met Brown in College Heights, and eventually the two of them, without Williams or Moffett, went to meet with Still at a gas station in Biloxi. Before they left, Brown and Ambrose put their respective firearms in the trunk of Ambrose’s car. On the way, Ambrose had several phone conversations with Still regarding the purchase of marihuana.
¶ 10. When Ambrose and Brown drove up to the gas station, they saw Still, along with a couple of other people, waiting outside the store. Still then telephoned Am-brose, asking him who was in the car with him and telling him to come back alone. Ambrose took Brown back to College Heights, dropped him off, and gave Brown his gun to hold for him. Ambrose returned to the gas station, Still got in his car, and the two drove to a nearby convenience store parking lot to make a deal. The two could not reach an agreement, and Still exited the vehicle, visibly upset. Ambrose returned to meet Brown; but on the way, he received several phone calls from Still asking him to come back and do the deal. Ambrose agreed. However, before meeting with Still a second time, Am-brose drove back to Brown’s location and retrieved his gun.
¶ 11. When Ambrose returned to the gas station, Still entered Ambrose’s car, this time holding a beer bottle,[1] and the two went to a nearby car wash at Still’s instruction. Ambrose then told Still that he wanted to spend around two hundred dollars on marihuana. Still said Ambrose was a wasting his time and became upset. Ambrose testified that Still began using foul language and behaving aggressively, and that Still then raised his beer bottle in his left hand, apparently intending to strike Ambrose. Ambrose claims that, at this point, he feared for his life, so he pulled out his gun and shot Still once. According to Ambrose, Still fell out of the car and, as he fell, dropped two bags of marihuana in the passenger area. Am-brose testified that he did not take any money or jewelry from Still. Ambrose then fled the scene, returning to College Heights to pick up Deshawn Brown. Am-brose dropped off Brown at the residence of Ambrose’s sister, picked up Moffett and Williams in Gulfport, and drove back to Terry. During the ride back to Terry, Ambrose told Moffett and Williams that things had not gone well, and that he had “accidentally shot the guy.” When he arrived at Terry, Ambrose removed the tinting from his ear’s windows and also removed the license plate from his car. He placed the black box that contained the bag of marihuana in the area around the trailer in which he was living.
*790 3. Gas station clerk, surveillance evidence, and Still’s necklace
¶ 12. The testimony of the State’s witnesses largely corroborated Ambrose’s version of events preceding the shooting. Crystal Elliott, an attendant at the gas station where Ambrose had met with Still, said that she knew Still as a regular around the gas station, and that he was picked up by a Crown Victoria that had pulled up that night. Elliot said that Still returned about fifteen minutes later, bought a twenty-four ounce beer, stayed for a few minutes, then left again. Elliott testified that, when Still returned to the gas station, he was upset because his drug deal had not gone down. He said that “the people he was supposed to do the deal with were being shady and sketchy about the whole situation.” He called his girlfriend to come pick him up, made some other phone calls, and left. Telephone records confirmed that Still had called Ambrose four times prior to calling his girlfriend, and once afterward. Elliott testified that Still was wearing a necklace and may have been wearing a ring. He also paid for his purchases out of a “thick stack” of folded-over bills. Still had told Elliott that he had an unspecified amount of marihuana in his possession. When the police came to the store later that night after discovering Still’s body, Elliott gave them access to the surveillance tapes from the store. The tapes confirmed that Still had been in the store twice, once buying cigarettes and later buying a twenty-four ounce beer. They also confirmed that he was wearing a necklace.
¶ 18. Regarding the necklace that was found in Ambrose’s car, which the State alleged had belonged to Still, the defense called Ambrose’s sister, Tiwana Ambrose, to testify that the necklace found in Am-brose’s car belonged to her brother. The defense also moved into evidence a photograph of Ambrose wearing the necklace in question, and Ambrose identified the necklace as his.
4. Robert Williams’s Testimony
¶ 14. Robert Williams, one of the men who had been with Ambrose that day, testified for the State at trial. His version of events differed substantially from Am-brose’s. He testified about the return trip to Terry, during which he, Ambrose, and Chad Moffett were in the car. Williams testified that Ambrose had told them that he “robbed a dude for two pounds, a stack of money, a ring with diamonds in it and a chain.” According to Williams’s testimony, Ambrose told them that Still had reached under the seat to grab a scale to weigh the drugs and felt a gun, at which point he tried to get out of the car. Am-brose put the gun that was under the seat to Still’s head, and when Still tried to get out, Ambrose grabbed his shirt and shot him in the back. Williams said that Am-brose told them that he had shot Still because Still would not hand over the marihuana. Ambrose also showed Williams and Moffett the chain, diamond ring, and stack of cash he had taken from Still, according to Williams. On the way back to Jackson, Williams said that Ambrose was in a jovial mood, “making it rain” by throwing the money he had stolen into the air, dancing, and playing happy music.[2] When they got to Jackson, they went to a hotel and rented two rooms, then went to a club.[3] They then went to the trailer that Williams’s sister shared with Ambrose’s girlfriend and Ambrose. Williams witnessed Ambrose peeling the tint from the car windows, removing the tag from the *791 car, and attempting to wipe the blood from the passenger area of the car. After hearing about Still’s death on the news, Williams went to Biloxi and gave a statement to the police in order to clear himself. Ambrose was arrested the next day.
¶ 15. Ambrose was indicted for capital murder with the underlying felony of robbery. The jury was instructed on capital murder with the underlying felony of robbery,[4] deliberate design murder, heat of passion manslaughter, and justifiable homicide in necessary self-defense. The jury acquitted Ambrose of capital murder, but found him guilty of deliberate design murder. Ambrose was sentenced to imprisonment for life. He appealed, raising three issues:
1. The evidence was insufficient to support the jury’s verdict finding Am-brose guilty of deliberate design murder.
2. The verdict is against the overwhelming weight of the evidence, which establishes that Ambrose is guilty, at most, of manslaughter.
B. Ambrose received ineffective assistance of counsel because his trial attorney failed to request an instruction on imperfect self-defense manslaughter, and Ambrose was prejudiced by that deficiency.

ANALYSIS

I. Whether the evidence was insufficient to support a guilty verdict for deliberate design murder.
¶ 16. When reviewing a challenge for sufficiency of the evidence, this Court must determine whether, “after ■viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (Miss.2005) (¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The State receives the benefit of any favorable inferences that reasonably can be drawn from the evidence, and this Court will reverse only where the facts and inferences which were considered “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.” Hughes v. State, 983 So.2d 270, 275-76 (¶¶ 10-11) (Miss.2008).
¶ 17. Ambrose argues that, because self defense was raised, the State had the burden of proving beyond a reasonable doubt that Ambrose did not kill Still in self defense. “The defendant is not required to prove he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, he must be acquitted.” Heidel v. State, 587 So.2d 835, 843 (Miss.1991) (internal quotation omitted); see also Scott v. State, 203 Miss. 349, 354, 34 So.2d 718, 719 (1948). Ambrose claims that the State failed to meet its burden of proving beyond a reasonable doubt that he did not act in self defense when he killed Still. The State responds that it submitted sufficient evidence such that a reasonable jury could have found beyond a reasonable doubt that Ambrose killed Still with deliberate design and not in necessary self defense.
¶ 18. Mississippi’s justifiable homicide statute states that
the killing of a human being ... shall be justifiable ... [w]hen committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable ground to apprehend *792 a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.
Miss.Code Ann. § 97-3-15(1)00 (Rev.2006). Ambrose testified that Still raised a twenty-four ounce beer bottle in a threatening gesture and, fearing that his life was in jeopardy, he shot Still. The evidence at trial showed that Still did purchase a twenty-four ounce bottle of beer before he was picked up by Ambrose the second time, and a beer bottle of that size was found in the car when it was searched by police. Further, Ambrose argues that if he had intended to kill Still, he would have done it the first time the two met, and that they met a second time only at Still’s insistence. This is corroborated by the four phone calls made from Still’s phone to Ambrose’s phone between 8:56 and 9:10 p.m. Further, Ambrose shot Still but once.
¶ 19. If Ambrose’s testimony were the only version of the events immediately surrounding the shooting presented at trial, his protestations might be more compelling. However, the State provided conflicting testimony through Robert Williams. Williams testified that, after the shooting, Ambrose said that he shot Still to take his belongings and marihuana, and that he had to shoot him because he “wasn’t trying to give it up.” Williams said that Ambrose told him that Ambrose had grabbed Still’s shirt when Still was trying to leave the car, and that Ambrose had shot him in the back.
¶ 20. “The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury.” Wade v. State, 748 So.2d 771, 774 (¶ 11) (Miss.1999). In this case, conflicting testimony was adduced regarding the events immediately surrounding the shooting. The jury was instructed on deliberate design murder and justifiable self defense. The jury weighed the evidence in favor of the State, and we cannot say that the evidence presented was insufficient for a rational jury to find beyond a reasonable doubt that Ambrose had shot Still with deliberate design to kill him and not in necessary self defense. The opposing theories of the prosecution and the defense were fully and fairly presented to the trier of fact. In the end, the disputed issues of fact were resolved in favor of the State and against the defendant. The issue is without merit.
II. Whether the verdict is against the overwhelming weight of the evidence because the evidence established either that Ambrose acted in self defense or is guilty, at most, of manslaughter.
 ¶ 21. This Court will disturb a verdict as against the overwhelming weight of the evidence only when to allow the verdict to stand would “sanction an unconscionable injustice.” Springer v. State, 89 So.3d 567, 572 (1126) (Miss.2012) (quoting Bush, 895 So.2d at 844). The Court must view all the evidence in the light most favorable to the State and give the State “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Springer, 89 So.3d at 572.
¶22. Ambrose argues that his conviction of deliberate design murder is against the overwhelming weight of the evidence, and that the evidence supported only the conclusion that he shot Still in justifiable self defense. This argument is without merit. Ambrose did present evidence and testimony to the effect that he met Still once, left, and then, at Still’s insistence, returned to do a drug deal. Ambrose admitted he was armed, and he admitted that he shot Still. Ambrose claims he shot Still because Still had a large beer bottle *793 with which he was poised to strike Am-brose. All of the evidence supports Am-brose’s story up to the point that Still actually was shot. However, the State presented competing testimony in support of its theory that Ambrose killed Still because Still would not give up the drugs and was attempting to exit the car. Ambrose admitted that he kept the two pounds of marihuana that he claims fell out of Still’s possession when he was shot. Williams testified that Ambrose told him that he, Ambrose, had shot Still because Still would not give him the drugs. The jury did not find beyond a reasonable doubt that Am-brose shot Still while engaged in the commission of a robbery; but it did find, beyond a reasonable doubt, that Ambrose killed Still with deliberate design to effect his death.
¶28. Although Ambrose did submit evidence to support his claim that he was acting in justifiable self defense when he shot Still, the State adduced testimony that Ambrose had shot Still as he was leaving the vehicle and not posing a threat. “Conflicting testimony does not evince overwhelming evidence; where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.” Brown v. State, 995 So.2d 698, 702 (Miss.2008) (¶ 13) (quotation omitted). Viewing the evidence in the light most favorable to the State, and granting the State the benefit of all inferences that may be drawn from the evidence, we find that the conviction for deliberate design murder was not against the overwhelming weight of the evidence.
¶ 24. Additionally, Ambrose’s alternative argument that the evidence weighed in favor of manslaughter only is without merit. Ambrose was granted a heat of passion manslaughter instruction. The jury was told that:
[T]he term heat of passion is defined as a state of violent and uncontrollable rage caused by certain provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror.
The awkward wording and grammar of this instruction notwithstanding, it matches this Court’s definition of “heat of passion.” See Givens v. State, 967 So.2d 1, 11 (¶ 33) (Miss.2007). The jury was sufficiently instructed on heat of passion manslaughter and on deliberate design murder. Conflicting evidence and testimony were adduced which could have supported either charge. The jury weighed the evidence and convicted Ambrose of deliberate design murder. Looking at the evidence in the light most favorable to the verdict, we find that the weight of the evidence supported a conviction for deliberate design murder. Allowing the verdict to stand would not sanction an unconscionable injustice. The issue is without merit.
III. Whether Ambrose received constitutionally ineffective assistance of counsel due to trial counsel’s failure to request an instruction on imperfect self defense.
¶ 25. Trial counsel for Ambrose requested and was granted a jury instruction on heat of passion manslaughter. The trial court also granted a jury instruction on necessary self defense. On appeal, Am-brose argues that the facts of the case naturally lend themselves to an instruction on imperfect self defense. He argues that his trial counsel was ineffective for failing *794 to request such an instruction, because, had he done so, there is a reasonable probability that the outcome of his trial would have been different. The State responds that trial counsel’s performance was not deficient, because Ambrose was not entitled to an instruction on imperfect self defense, as the facts of the case did not support such a theory. It further argues that trial counsel’s decision to request a jury instruction is a strategic one, and that this Court generally does not second guess such strategic decisions.
Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately. Wilcher v. State, 863 So.2d 776, 825 (Miss.2003). In such a case, the appropriate procedure is to deny relief, preserving the defendant’s right to argue the issue through a petition for post-conviction relief. Read v. State, 430 So.2d 832, 837 (Miss.1983).
Archer v. State, 986 So.2d 951, 955 (¶ 15) (Miss.2008). In this case, the Court is in the dark about whether counsel for Am-brose even considered an imperfect self defense theory, or what his reasons were for not requesting an instruction on that theory. Accordingly, we forego consideration of Ambrose’s claim of ineffective assistance of counsel without prejudice so that it may be pursued in post-conviction proceedings, should Ambrose later choose to engage in such an undertaking.

CONCLUSION

¶ 26. The State presented sufficient evidence to convict Michael Ambrose of deliberate design murder. Conflicting evidence was presented which could support self defense, manslaughter, or murder; but the determination was one for the jury, and it found against the defendant. The conviction of murder was not against the overwhelming weight of the evidence. The State adduced testimony that supported a conviction, and the jury was instructed properly on all the relevant defenses and applicable law. Finally, this Court hereby dismisses Ambrose’s ineffective assistance of counsel claim without prejudice to his ability to raise it in post-conviction proceedings.
¶ 27. CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.

. Surveillance footage from the gas station showed Still purchasing a twenty-four ounce bottle of beer just before he left the gas station for good.

. Ambrose denied doing any of this.

. Ambrose confirmed this.

. The jury was instructed on the elements of robbery in Jury Instruction S-2.