# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00184-SCT

*GAIL ROBINSON a/k/a GAIL ELIZABETH*
*ROBINSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2022 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| TRIAL COURT ATTORNEYS: | CLAY SPENCER NAILS |
| | TYLER LLOYD MOSS |
| | JOSHUA A. TURNER |
| | KYLE DAVID ROBBINS |
| | MEGAN DIANE FRENCH |
| | CLAYTON MATTHEW CUMMINGS |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN T. COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/18/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    Gail Robinson challenges her conviction of heat-of-passion manslaughter and asks the Court to reverse her conviction and render a verdict of not guilty. On appeal, Robinson asserts that her trial counsel was ineffective for failing to offer a jury instruction on her right to stand her ground in self-defense and that the State presented insufficient evidence to show

she did not act in self-defense.  We affirm her conviction.

## FACTS AND PROCEDURAL HISTORY

¶2.    Gail Robinson and Bobby Pruitt had a volatile relationship.  Both Robinson and Pruitt had been convicted of domestic violence against each other in the past. On June 17, 2016, after he allegedly physically assaulted Robinson, Pruitt was stabbed and killed.  Earlier in the night, Robinson was at her niece's next-door trailer at Oakdale Mobile Home Park when Greg, Robinson's minor son, called. Greg told her that Pruitt had not picked him up from the park, and Robinson left her niece's to go get him.  Greg was playing basketball at a park next to The Hut, a club.  After picking up Greg, Robinson stopped by The Hut, and she and Pruitt got into a verbal altercation.

¶3.    Robinson took Greg home, announced to her friends that she was going to celebrate being single, and left again.  Robinson went to The Hut.  Robinson was seated at a table with several women when Pruitt walked up and slapped her in the face.  Robinson asked Pruitt to leave her alone, but he refused.  Pruitt was then restrained by another customer, but he broke free and went outside.  Pruitt heard Robinson's voice and ran to confront her further.  He called her a "bitch" and threatened to kill her.  When others tried to stop Pruitt, he threatened to kill them as well.  When Robinson was attempting to leave The Hut, Pruitt tried to get in her car.  Robinson told him to get out, and, after some scuffling, Pruitt fell to the ground. Robinson rolled up her window and told Pruitt not to come to her house.  Robinson was finally able to escape after Pruitt was restrained.  Her last words before leaving were: "[P]lease don't come back. It is over. I just want to be free. I just want you to leave me

2

alone."

¶4.     When Robinson returned to the trailer park, she was crying and emotional. Robinson announced that her relationship with Pruitt was over and that she just wanted him to get his stuff and leave. Pruitt, not respecting Robinson's requests to be left alone, arrived and had not calmed down. Pruitt, visibly intoxicated,[1] arrived in an aggressive state and was driving his car erratically and performing "donuts" in the driveway, spinning rocks in everyone's direction.

¶5.     Pruitt exited the vehicle and ran toward Robinson, asking her, "What are you going to do now?" Robinson told Pruitt that she was "done" with him and that she wanted him gone. When Robinson and Pruitt began fighting, Greg jumped in between the two, defending his mother by pushing Pruitt to the ground. Pruitt then stood up and taunted Greg. Greg was taken to a car to get him away from the violent situation.

¶6.     Robinson and Pruitt walked toward their house. Before entering, Pruitt slammed a glass door against the side of the house and went in by himself. After Pruitt entered the house, he began to break things. Despite being told by neighbors not to enter, Robinson went into the house. Robinson and Pruitt began "fighting like two raging bulls joined together."

¶7.     Eventually, Greg was able to exit the car and ran inside the house. Robinson repeatedly exclaimed that she wanted Pruitt to leave. Greg separated Pruitt and Robinson and told Robinson to pack her clothes. Greg left the house, thinking the two had separated.

---

[1] The parties stipulated that Pruitt's blood alcohol level was .213 and that he had likely consumed marijuana based on the toxicology report. Pruitt had also been kicked out of The Hut earlier that evening because he was so angry and drunk.

One witness testified that Pruitt got up and began walking toward Robinson; she then hit him and knocked him to the ground. Robinson stood over Pruitt and continued to punch him.

¶8. Corinth Police Officer Codi Robinson arrived at the scene at 12:30 a.m. in response to a report of a domestic disturbance. When he arrived, Officer Robinson observed Greg still outside, "somewhat irate," and pacing. Officer Robinson went inside and found Pruitt lying face-up on the ground with a "very large knife" in his chest. Pruitt had a small abrasion on his forehead as well. Pruitt was still alive but was gargling and spitting blood. Officer Robinson said Pruitt tried to stand but he told Pruitt to stay down, and he called for paramedics. Officer Robinson said he could tell that Pruitt was likely fatally wounded from those injuries. Robinson was in the kitchen opening and shutting drawers but came out unarmed. At the scene, Robinson told Officer Robinson that she was the one who stabbed Pruitt, not Greg.

¶9. Officers took both Robinson and Greg into custody for questioning. While Officer Robinson and Robinson were waiting for her to talk to detectives, she told him, "My son didn't do anything wrong. I was the one that put that knife in his chest. Y'all need to let him go. He is a good kid."

¶10. Detective Heather Russell investigated Pruitt's death after he succumbed to his stab-wound injuries. She photographed the scene and noted at least three significant injuries on Pruitt's body. A knife was still stuck in his chest, and there was another knife beside the body. Detective Russell also noted blood in the kitchen area, and blood trailed into the living room where Pruitt's body was found.

4

¶11.    During her investigation, Detective Russell obtained two statements from Robinson. In the first, Robinson admitted stabbing Pruitt in the back with a knife, and because the original knife handle broke, she stabbed Pruitt in the chest with another knife. Robinson showed Detective Russell several injuries from Pruitt's assaults on her.[2] When Detective Russell informed Robinson that Pruitt had died, Robinson became very upset, and the interrogation stopped. In the second statement, Robinson told Detective Russell that she only used one knife. Robinson also told Detective Russell that Pruitt had a big knife, and it should have been found beside him with fingerprints on it.[3] Robinson later clarified that she stabbed Pruitt in the back and that the blade and handle broke.[4]

¶12.    Detective Russell ultimately charged Robinson with heat-of-passion manslaughter because she knew Robinson killed Pruitt, but she did not believe Robinson had done so with malice. But Detective Russell also did not believe Robinson had acted in self-defense: she noted that Robinson had stabbed Pruitt in the back and then retrieved another knife to continue stabbing him. Detective Russell also noted that Robinson had an opportunity to exit the home after stabbing Pruitt in the back, but she did not.

¶13.    On December 21, 2016, an Alcorn County, Mississippi, grand jury returned a one-count indictment against Robinson, charging her with heat-of-passion manslaughter. More

---

[2]Detective Russell did not see any visible, fresh injuries on Robinson's body. She took photos of places Robinson claimed to be injured.

[3]Detectives did not find fingerprints on that knife.

[4]Detectives did find a broken knife in the home.

than five years later,[5] on February 28, 2022, Robinson was tried by a jury, and the jury was instructed on heat-of-passion manslaughter, self-defense, and reasonable use of force. On March 3, 2022, she was convicted as charged. On March 11, 2022, she was sentenced to twenty years, eight years suspended and twelve years to serve in the custody of the Mississippi Department of Corrections. She is at present incarcerated. Robinson filed her post-trial motion on March 21, 2022, which the trial court denied on October 25, 2022. Robinson appeals.

## DISCUSSION

¶14.    Robinson raises two issues on appeal for this Court's review. First, she argues her trial counsel was ineffective by failing to request a jury instruction regarding her right to stand her ground in self-defense. Second, she argues that the State's evidence was insufficient to show that Robinson did not act in self-defense during the encounter with Pruitt.

### I.    Ineffective Assistance of Counsel

¶15.    Robinson first argues that her trial counsel was ineffective for failing to offer a favorable jury instruction on her right to stand her ground in self-defense.

¶16.    As we stated in *Archer v. State*, "ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings" "because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim

---

[5]The record is silent as to why it took more than five years to bring Robinson to trial. The record does not contain a demand for a speedy trial.

6

adequately." ***Archer v. State***, 986 So. 2d 951, 955 (Miss. 2008) (citing ***Wilcher v. State***, 863 So. 2d 776, 825 (Miss. 2003)). When the Court is presented with such a case, "the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief (PCR)." ***Dartez v. State***, 177 So. 3d 420, 423 (Miss. 2015) (citing ***Read v. State***, 430 So. 2d 832, 837 (Miss. 1983)).

¶17. Though we most often review ineffective assistance of counsel claims in post-conviction proceedings, "we 'may nevertheless reach the merits of the ineffectiveness issue where . . . the record affirmatively shows ineffectiveness of constitutional dimensions . . . .'" ***Taylor v. State***, 167 So. 3d 1143, 1146 (Miss. 2015) (alterations in original) (quoting ***Read***, 430 So. 2d at 841); *see also* M.R.A.P. 22(b) ("Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record.") We do not find the record in this case to be so affirmatively clear on the ineffectiveness issue.

¶18. "Whether a defendant has received ineffective assistance of counsel is a question of law reviewed *de novo* under two prongs: '[f]irst, the defendant must show that counsel's performance was deficient . . . Second, the defendant must show that the deficient performance prejudiced the defense." ***Taylor***, 167 So. 3d at 1146 (alterations in original) (quoting ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "[T]rial counsel is presumed to be competent, and [the Court's] scrutiny of trial counsel's performance 'must be highly deferential.'" ***Walker v. State***, 303 So. 3d 720, 726 (Miss. 2020) (quoting ***Goodin v. State***, 102 So. 3d 1102, 1117 (Miss. 2012)). The

"benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Ransom v. State*, 919 So. 2d 887, 889 (Miss. 2005) (citing *Foster v. State*, 687 So. 2d 1124, 1129–30 (Miss. 1996)).

¶19. Establishing prejudice under *Strickland* requires a defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "And even where professional error is proven, this Court must determine if there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Chamberlin v. State*, 55 So. 3d 1046, 1050 (Miss. 2010) (quoting *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991)).

¶20. It is axiomatic that "[i]n homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuses that are supported by the evidence, no matter how meager or unlikely, and the trial court's failure to do so is error requiring reversal of a judgment of conviction." *Manuel v. State*, 667 So. 2d 590, 593 (Miss. 1995). "If the defendant presents sufficient evidence in the record to support [her] theory of the case, [s]he should then be given an instruction on [her] theory of the case. There need not be even a plausible explanation." *Walker v. State*, 913 So. 2d 198, 235 (Miss. 2005). "[W]hen serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused." *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009)

(citing *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992), *overruled on other grounds by Nevels v. State*, 325 So. 3d 627 (Miss. 2021)).

¶21.   To receive a stand-your-ground instruction, there must be at least some evidence that the defendant is not the initial aggressor.  Miss. Code Ann. § 97-3-15(4) (Rev. 2014).  Whether Robinson's trial counsel should have offered a stand-your-ground instruction involves facts not fully apparent from the record before the Court.  We therefore cannot adequately analyze and address her claim of ineffective assistance of counsel on direct appeal.  We thus affirm her conviction on direct appeal; however, if she so chooses, Robinson may assert and argue her claim through a PCR petition after she seeks leave of this Court.  *See* Miss. Code Ann. § 99-39-7 (Rev. 2020).

## II.   Self-Defense

¶22.   Second, Robinson contends that the State failed to furnish adequate evidence disproving her claim of self-defense.  Robinson argues that, under the circumstances, a reasonable person would have perceived an imminent threat of death or great bodily harm.  The State counters that Robinson's self-defense claim lacks a proper framework and supporting evidence.  The State asserts that circumstances preceding Robinson's entry into the trailer home were irrelevant to a self-defense claim and that the jury's rejection of the claim was rooted in a comprehensive evaluation of evidence and witness credibility.  Upon review, this Court finds the State's evidence sufficient and affirms the jury's determination.

¶23.   When we review a challenge to the sufficiency of the evidence, this "Court must determine whether, 'after viewing the evidence in the light most favorable to the prosecution,

9

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ambrose v. State*, 133 So. 3d 786, 791 (Miss. 2013) (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), *abrogated by Little v. State*, 233 So. 3d 288 (Miss. 2017)).

> The State receives the benefit of any favorable inferences that reasonably can be drawn from the evidence, and this Court will reverse only where the facts and inferences which were considered "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty."

*Id.* (quoting *Hughes v. State*, 983 So. 2d 270, 275–76 (Miss. 2008)). "The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury." *Id.* at 792 (internal quotation marks omitted) (quoting *Wade v. State*, 748 So. 2d 771, 774 (Miss. 1999)).

¶24. In this case, Robinson was charged with heat-of-passion manslaughter. At the time of the crime, as now, Mississippi Code Section 97-3-35 defined manslaughter as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Miss. Code Ann. § 97-3-35 (Rev. 2014). Our case law has described heat of passion as

> [a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror.

*Phillips v. State*, 794 So. 2d 1034, 1037 (Miss. 2001) (quoting *Agnew v. State*, 783 So. 2d

10

699, 702 (Miss. 2001)).

¶25. In response to that charge, Robinson raised a claim of self-defense. In Mississippi, a homicide is justifiable in the following circumstances, among others:

(e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling, in any occupied vehicle, in any place of business, in any place of employment or in the immediate premises thereof in which such person shall be;

(f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished[.]

Miss. Code Ann. § 97-3-15(1)(e), (f) (Rev. 2014).

¶26. Further, a defendant who is not the initial aggressor has no duty to retreat. Miss. Code Ann. § 97-3-15(4) (Rev. 2014). When a defendant raises self-defense, the State bears the burden of proving that the defendant did not act in necessary self-defense. *Smith v. State*, 208 So. 3d 1, 3 (Miss. Ct. App. 2016) (citing *McIntosh v. State*, 749 So. 2d 1235, 1240 (Miss. Ct. App. 1999)); *see also Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991).

¶27. Robinson challenges the sufficiency of the evidence, asserting that Pruitt's initial striking of Robinson shows he was the initial aggressor. Robinson argues that Pruitt's return to the trailer home consisted of repeated confrontations that were amplified by his intoxication. She also states that Pruitt had assaulted her teenage son. These factors, according to Robinson, led her to reasonably fear for her and her son's safety when she stabbed Pruitt. Finally, Robinson asserts that the State failed to meet its burden to prove

11

beyond a reasonable doubt that she did not fear imminent death or great bodily harm at the time of the stabbing.

¶28. In response, the State argues that Robinson's frame for rebutting the sufficiency of the evidence is improper, citing that the proper frame presents "a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury." *Ambrose*, 133 So. 3d at 792 (internal quotation mark omitted) (quoting *Wade*, 748 So. 2d at 774). According to the State, Robinson did not argue against feeling "an emotion brought about by some insult, or provocation, or injury, which would produce in the minds of ordinary [persons] 'the highest degree of exasperation.'" *Phillips*, 794 So. 2d at 1037 (quoting *Graham v. State*, 582 So. 2d 1014, 1018 (Miss. 1991)). During the turmoil of the incident, and between several bouts of violence, it is uncontested that several witnesses heard Robinson state that she was "done" and "through" and wanted Pruitt "gone." The State contends that the jury could have reasonably concluded that Robinson stabbed Pruitt multiple times out of anger and rage amid the circumstances of the evening.

¶29. The State further maintains that there is no evidence of self-defense and that Robinson was not forced to act to prevent her death or great bodily harm. The evidence and testimony given by Robinson to Detective Russell point to an instance of initiating an attack, retreating for another weapon, and continuing the attack. Witnesses testified that Robinson knocked Pruitt onto the ground and continued to attack him while he was no longer a threat. Further, Robinson actively pursued Pruitt into the trailer home, despite witnesses' attempts to restrain her and block her entry.

¶30. The jury was instructed on self-defense and heard Robinson's story via her statements to Detective Russell, which they rejected after weighing the evidence and credibility of other witnesses. According to the State, the evidence was sufficient to show that Robinson killed Pruitt while in an emotional and violent rage, following both a prolonged and immediate provocation, thus disproving Robinson's self-defense claim.

¶31. Based on the facts and the testimony presented, Robinson continued to attack Pruitt past the point of any reasonable fear of imminent death or great bodily harm. She stabbed Pruitt in the back with one knife and in the chest with another, which she had ample time to retrieve from another room in the home. The jury was instructed on self-defense and heard Robinson's statements given to the detectives, which they rejected. "It is ultimately the jury's role to 'weigh witness testimony and determine its credibility.'" *Jones v. State*, 203 So. 3d 600, 607 (Miss. 2016) (quoting *Osborne v. State*, 54 So. 3d 841, 846 (Miss. 2011)). The verdict here is "not 'so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Eaton v. State*, 359 So. 3d 1081, 1088 (Miss. 2023) (quoting *Newell v. State*, 175 So. 3d 1260, 1268 (Miss. 2019)). We affirm: "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ambrose*, 133 So. 3d at 791 (internal quotation mark omitted) (quoting *Bush*, 895 So. 2d at 843)).

¶32. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**